THE BURGESS BROS. CO., INC., Plaintiff, *v.* FREDERICK STEWART et al., Defendants.

(Supreme Court, Kings Special Term for Motions, June, 1920.)

Injunctions — when motion for a preliminary injunction granted — carriers — labor unions — corporations — ships and shipping — conspiracy — United States Shipping Act, approved September 2, 1916 — interstate commerce — United States Revised Statutes, § 5440.

Plaintiff is a foreign corporation engaged in business as a dealer in lumber, and in all its sales contracts to deliver lumber at points designated by the purchasers. It delivers the lumber in trucks driven by its regularly employed chauffeurs and teamsters. In its export trade it either acts as shipper in securing transportation by water or the purchaser acts as the direct shipper but in either case the lumber is hauled to the piers of the defendants' steamship lines by plaintiff's own employees, who are selected by it regardless of union affilia-

tions. Since a strike by its employees for a closed shop and union conditions, which plaintiff was unwilling to grant, it has been impossible for plaintiff to secure union truckmen to work for it or to handle its material when employed by anybody else, and the defendants agreed among themselves not to receive plaintiff's lumber at the piers or transport it until such time as plaintiff will consent to the closed shop and union regulations. Lumber offered by delivery to steamship lines where space had been secured was refused. Steamship lines would refuse to sell space to the plaintiff and subsequently sell it to other shippers. *Held,* that the affidavits on a motion for an injunction *pendente lite* presenting a combination and conspiracy between the carriers and the unions to violate the provisions of the United States Shipping Act, approved September 2, 1916, the purpose of which *inter alia* is, " to regulate carriers by water engaged in foreign and interstate commerce of the United States," and also to violate section 5440 of the Revised Statutes of the United States, the injunction will be granted, it appearing that the plaintiff is being irreparably injured in its property rights by acts done by the defendants in furtherance of such conspiracy in discriminating against plaintiff's freight. Common carriers owe an affirmative duty to perform impartial service, and it is their duty to serve the plaintiff and not discriminate against it. Employees of common carriers are also bound to serve the public indiscriminately. The law cannot force a man to remain in the service of the public, but while so employed he is bound by public statutes as well as his employer. He must serve all persons alike or get out of the transportation business.

MOTION for a preliminary injunction.

Austin, McLanahan & Merritt, for plaintiff.

Burlingham, Veeder, Masten & Fearey, for defendant Sanderson & Son.

Kirlin, Woolsey, Campbell, Hickox & Keating, for defendant Frederick S. Stewart et al.

Lord, Day & Lord, for defendant Cunard Steamship Company, Ltd.

William W. Corlett, for defendant United States Steel Products Company.

Mann Trice, for defendant Transportation Trade Council et al.

George J. Joyce, for defendant Greater New York Lumber Handlers' Union, Local No. 17122 et al.

FAWCETT, J. This is a motion for a preliminary injunction in an action for an injunction and damages.

The plaintiff is a foreign corporation engaged in business as a dealer in lumber, with its principal offices in Brooklyn. It has over $200,000 invested in its business and its annual sales exceed $600,000, of which over $500,000 are made in export trade to consignees in foreign countries. The plaintiff in all its sales contracts to deliver lumber at a point designated by the purchaser and trucks the lumber by its regularly employed chauffeurs and teamsters. Plaintiff, in its export trade, either acts as shipper in securing water transportation or the purchaser acts as the direct shipper, but in either case the plaintiff's chauffeurs and teamsters haul said lumber to the pier of the steamship line. Plaintiff selects its help regardless of union affiliations and adheres to the open shop policy.

The defendant steamship lines are all common carriers engaged in transporting general freight, including lumber, between the United States and foreign countries. The other defendants are Truck Drivers and Chauffeurs Local Union No. 807, Greater New York Lumber Handlers' Union No. 17122, Steamship Clerks' Union of Brooklyn and Staten Island, Local 975, I. L. A., Transportation Trades Council of the Port of New York and Vicinity, the last of which is a federation of unions of employees engaged in and

about the piers and steamers and certain officers and members of said unions. The clerks, checkers, etc., employed at the steamship piers, including the members of Local 975, perform necessary service incidental to actual transportations and goods cannot be transported without such service.

The relief sought in the action is that the defendants, their agents, servants and employees and all persons acting in aid of or in conjunction with them be perpetually enjoined and restrained from combining and conspiring together in any manner to injure and destroy the plaintiff's good will, trade and business and from taking any steps whatsoever to interfere with the rights of the plaintiff, to have its goods received, receipted for, handled, weighed and transported by common carriers without discrimination, by refusing to accept, receipt for, handle, weigh or transport said goods, or by causing, threatening or participating in any strike of the employees of said common carriers because said common carriers accept, receive or transport or are about to transport or to accept and receive or transport merchandise delivered by the plaintiff or by its employees; and from inducing others to do any of the acts forbidden by the injunction; and that the defendant steamship lines, their officers, servants and employees be perpetually enjoined and restrained from refusing to perform their duties as common carriers in connection with the merchandise delivered by plaintiff or its employees and from discriminating against goods delivered by the plaintiff for transportation by common carriers; that plaintiff also seeks to recover money damages in its action.

The plaintiff claims the defendants have formed a conspiracy in violation of the state and federal laws and the common law, to deprive the plaintiff of its right to have merchandise delivered or shipped by it, transported by these common carriers without dis-

crimination. And in furtherance of the conspiracy the defendant unions have induced the defendant carriers to refuse to perform their duties as common carriers, and have threatened them with strikes if they do perform their duties, and have induced them to violate contracts for the transportation of plaintiff's merchandise; that the defendant carriers have refused and agreed to refuse to transport plaintiff's merchandise and have broken their contracts for such transportation and that it is generally advertised that these things have happened and that plaintiff's goods are untransportable.

It is charged in the complaint that the plaintiff and certain other lumber dealers suffered a strike of its teamsters, chauffeurs and lumber handlers in January, 1920, which strike was called respectively by Truck Drivers' and Chauffeurs' Local 807 and the Lumber Handlers' Union No. 17122. The strike was for the closed shop and union conditions which the plaintiff was unwilling to grant. Since the strike it is impossible for the plaintiff to secure any union truckmen to work for it or to handle its material when employed by anybody else until such time as it will consent to the closed shop and union regulations. The plaintiff reorganized its force and proceeded to do business as usual, but the Lumber Handlers' Union and Truck Drivers' Union No. 807 made arrangements with Steamship Clerks' Union and the Transportation Trades Council, whereby the merchandise delivered by the plaintiff, whether plaintiff was acting as shipper or whether the purchaser was acting as shipper, would not be received at the piers and transported, until such time as the plaintiff unionized its truckmen and lumber handlers and proceeded to do business under union conditions.

The plaintiff's affidavits submitted herein set forth

many specific instances of the refusal of the employees of the common carriers to carry out their contracts or to transport plaintiff's merchandise and their threats of strike to the carriers if the carriers attempt to transport such merchandise; the refusal of the carriers to carry out their contracts for the transportation of said merchandise, and to furnish space in the future for its transportation, whether offered by the plaintiff as shipper or by the plaintiff's customer as shipper, and the general understanding upon the part of the carriers that such merchandise will not be accepted. And in six cases of refusal to accept and transport the merchandise, the space had already been contracted for and there was a refusal to carry out the contract, and an inducement by the employees to cause a breach of said contract, and that transportation is refused plaintiff as a shipper; that it appears a representative of a union defendant, Clerks' Local No. 975, delivered in each instance to a steamship line defendant or its agent at the pier a list of concerns whose lumber should not be handled, which included the name of the plaintiff. Defendants refused to accept the lumber of plaintiff for fear of a strike by the checkers and longshoremen, which would prevent the ship's sailing. Orders had been issued by the defendant, the Transportation Trades Council, to refuse all lumber delivered by plaintiff through non-union truckmen; that lumber offered by delivery to steamship lines where space had been secured was refused. Steamship lines would refuse to sell space to this plaintiff and subsequently sell it to other shippers. In short, that no more of plaintiff's lumber would be handled by any of the steamship lines until the difficulties were adjusted between the plaintiff and the unions.

The moving papers herein show that all of the parties are engaged in a combination having for its object the exclusion of plaintiff's merchandise from trans-

portation by defendant carriers, both where plaintiff is the shipper and where its customers are the shippers. The continuance of this condition makes it impossible for plaintiff to carry on export trade in any form. If combinations of this character are lawful then it is impossible for any trucking to be done in New York city and vicinity except on terms that the Truckmen's Union permits, and it becomes entirely practicable for the Truckmen's Union to decide what merchandise it will haul and what merchandise it will not haul.

The affidavits of the union defendants generally admit the specific acts charged and assert their legality. The affidavit of defendant Joseph Ryan, vice-president of the International Longshoremen's Union and Secretary of Local 791, states that the Transportation Trades Council is composed of checkers, clerks, foremen, lighter captains, coal handlers, scalemen and weighers, and it is generally admitted that it includes the truckmen and chauffeurs. This Trades Council adopted unanimously the following policy: " None of the members would handle any non-union goods or any goods transported in any way by firms, corporations, or individuals, who refused to employ union labor or refuse to enter into a contract to transport their goods under union terms."

The affidavit of James T. Hennessey, business agent of Local 874, Commercial Checkers' Union, states the policy of the affiliated unions as follows: " That no union member should thereafter work with any non-union labor and that they should not handle the products of any non-union labor and should not assist in the transportation of any goods which was to be forwarded by any firms, individual or corporation which either refused to employ union labor, or refused to enter into contract or agreement with the various unions represented by the Trades Council."

And it further states that, ''As transportation of goods throughout the City was distributed among various trade unions all of whose work was a necessary link in said transportation and as the interests were identical that which hurt one would hurt all and that which helped one would help all.''

The affidavit of defendant George Campbell, business agent of Steamship Clerks' Union, Local No. 975, makes similar assertions and admits he left lists of the unfair concerns at the piers of the defendant carriers.

This seems to me to be a combination to gain control over transportation and to blockade the channels of trade against all but union merchandise and against all concerns who do not make union contracts. Such a combination to exclude open shop merchandise from the channels of trade and commerce and from the markets of the nation is a conspiracy against public welfare and deprives the public of their sovereign right of choice to purchase such goods as they want, because by artificial methods it keeps such goods out of the market. They will not permit anyone but themselves to handle shipments.

The affidavits of the defendant carriers deny the statements to the effect that lists of unfair lumber dealers were left at the piers while the union defendants admit such lists were left there and that one union officer was suspended for failure to distribute this information in one instance. The United Port Service Company was shown to be an agency of Norton, Lilly & Co. and the Overseas Shipping Company was an agency employed by the United States Steel Products Company. These terminal agencies and facilities are expressly dealt with by the United States Shipping Act, just as if they were common carriers. The representatives of those companies who declined to furnish service are clearly violating the

law and their employees who strike or threaten to strike to compel them to violate the law are clearly engaged in an illegal combination.

The affidavit of Thomas P. Alder for the United States Steel Products Company, says: " I am informed and believe that if the Overseas Shipping Co. should attempt to enforce any orders or regulations upon the checkers or stevedores employed by it, contrary to instructions of the Unions to which these men belong such action would precipitate a strike and would prevent the operation of these stevedores of the United States Steel Products Co. to its great loss and to the detriment of the best interests of the general public."

It appears the carriers knew of the rule laid down by the employees and, so far as the papers go, have acquiesced in them without any protest. Common carriers owe an affirmative duty to perform impartial service and it is unlawful to subject plaintiff to undue prejudice. Their duties call upon them as common carriers to serve the plaintiff and not discriminate against it. If the carriers and their terminal agencies, instead of joining with the unions in this combination, by submitting to this discrimination for fear of a strike, had stood squarely for the performance of their public duties, it is doubtful if the plaintiff would now be in court. The carriers appeared to have aided, abetted and encouraged the unions by seeking to evade their duties to handle the plaintiffs' goods without discrimination.

The facts herein seem to present a conspiracy within this definition: "A conspiracy is sufficiently described as a combination of two or more persons by concerted action to accomplish a criminal or unlawful purpose or some purpose not in itself criminal or unlawful, by criminal or unlawful means." They

show a combination to violate the positive provisions of the Shipping Act and the provisions of section 5440 of the Revised Statutes. Under the terms of the United States Shipping Act, approved September 2, 1916 (39 Stat. at Large, No. 729), the purpose of which, among other things, is " To regulate carriers by water engaged in the foreign and interstate commerce of the United States," common carriers by water are clearly described to include the defendant carriers, and the term " Other persons subject to this act," includes persons " Carrying on the business of forwarding, or furnishing wharfage, dock, warehouse, or other terminal facilities in connection with a common carrier by water."

Section 14 of the Shipping Act provides: " No common carrier by water shall directly or indirectly * * *

" *Third,* Retaliate against any shipper by refusing, and threatening to refuse, space accommodations when such are available, or resort to other discriminating or unfair methods, because such shipper has patronized any other carrier or has filed a complaint charging unfair treatment, or for any other reason.

" *Fourth,* * * * unfairly treat or unjustly discriminate against any shipper in the matter of (a) cargo space accommodations or other facilities, due regard being had for the proper loading of the vessel and the available tonnage; (b) the loading and landing of freight in proper condition; or (c) the adjustment and settlement of claims. Any carrier who violates any provision of this section shall be guilty of a misdemeanor, punishable by a fine of not more than $25,000 for each offense."

Section 16 provides:

" That it shall be unlawful for any common carrier by water, or other persons subject to this Act " (mean-

ing those operating docks, wharves, etc.,) " either alone or in conjunction with any other person, directly or indirectly

" *First* * * * to subject any particular person, locality, or description of traffic to any undue or unreasonable prejudice or disadvantage in any respect whatsoever."

Section 17 provides: " Every such carrier and every other person subject to this Act shall establish, observe, and enforce just and reasonable regulations and practices relating to or connected with the receiving, handling, storing, or delivering of property."

Section 32 provides: " Whosoever violates any provision of this Act, except where a definite penalty is provided, shall be guilty of a misdemeanor, punishable by fine not to exceed five thousand dollars." Under the provisions of these statutes, it seems clear that a refusal on the part of the carriers to transport the plaintiff's merchandise, constitutes a violation of law and a crime, and that the defendant unions and officers are engaged in an unlawful conspiracy when they induce, aid and abet the carriers in committing this misdemeanor and threaten them with a strike unless they commit the misdemeanor.

A combination and conspiracy to bring about a violation of the Federal statute is also a violation of section 5440 of the Revised Statutes of the United States, which provides as follows: " If two or more persons conspire to commit any offense against the United States and one or more parties do any act to effect the object of the conspiracy, all the parties to such conspiracy shall be liable to a penalty of not more than ten thousand dollars or to imprisonment for not more than two years, or to both fine and imprisonment, in the discretion of the court."

The combination presented in this case is in viola-

tion of both the Shipping Act and Revised Statutes (§ 5440), and the plaintiff, being irreparably injured in its property rights by acts done in furtherance of such conspiracy, is entitled to an injunction. *Toledo, A. A. & N. M. Ry. Co.* v. *Pennsylvania Co.*, 54 Fed. Repr. 730, 736; *United States* v. *Cassidy*, 67 id. 698; *Waterhouse* v. *Comer*, 55 id. 149, 157; *Stephens* v. *Ohio State Telephone Co.*, 240 id. 759; *Chicago, B. & Q. Ry. Co.* v. *Burlington, C. R. & N. Ry. Co.*, 34 id. 481; *Wabash R. Co.* v. *Hannahan*, 121 id. 563; *Alaska S. S. Co.* v. *International Longshoremen's Assn.*, 236 id. 964.

The case of *Toledo, A. A. & N. M. Ry. Co.* v. *Pennsylvania Co.* is indistinguishable. There the plaintiff railroad company secured an injunction against a connecting railroad company, its employees and servants, for refusing to handle freight delivered by the complainant on the ground that the complainant had a strike with its employees, and also an injunction against the head of the union from enforcing any order requiring such refusal. The injunction was upheld. Subsequently, one Lennon was held in contempt (same case, 746) and his punishment for contempt for quitting work was sustained by the United States Supreme Court. *Matter of Lennon*, 166 U. S. 548.

In the original case, Judge Taft says:

"Anyone, though not an officer or agent (of the carrier) successfully aiding, abetting or procuring such officer or agent to violate the section (of the Interstate Commerce Act) will be punishable under it as a principal.

"Again, for the men in furtherance of Rule 12 either to refuse to handle the freight or to threaten to quit, or actually to quit, in order to procure or to induce the officers of the defendant companies to violate the provisions of the Interstate Commerce Law, would constitute acts in furtherance of the conspiracy and

would render them also liable to the penalty of the same section."

The unions and their officers who *advise,* aid or abet in the scheme become principals with the carriers and are liable to prosecution under the statutes. *United States* v. *Debs,* 64 Fed. Repr. 724, 764; *United States* v. *Cassidy,* 67 id. 781.

" When doing the work of the corporation, their employees are made criminally liable for disobeying the commands of the law to the corporation." *Toledo, A. A. & N. M. Ry.* v. *Penn. Co.,* 54 Fed. Repr. 743.

Nor is it any excuse or defense for the carriers' refusal to perform their statutory duties that their employees are threatening to strike. *Chicago, B. & Q. Ry.* v. *Burlington, C. R. & N. Ry. Co., supra; Toledo, A. A. & N. M. Ry. Co.* v. *Penn. Co., supra.*

The common law obligation of the carriers to serve the public without discrimination is incontrovertible. *Root* v. *Long Island R. R. Co.,* 114 N. Y. 300; *Windsor* v. *N. Y. Central & H. R. R. R. Co.,* 82 Misc. Rep. 38; affd., 220 N. Y. 695. It is an elemental duty for the carriers to transport and they cannot even discriminate against a group or an entire industry. *Cheney Bros.* v. *Hines,* C. C. A., 2d Circuit, March 29, 1920. The failure to perform that duty constitutes a tort. *Pittsburgh Ry. Co.* v. *Morton,* 61 Ind. 539; Michie Carriers, 381.

"All who aid, command, advise or countenance the commission of a tort by another, or who approve of it after it is done, if done for their benefit, are liable in the same manner as they would be as if they had done the same tort with their own hands." *Monroe* v. *Longren,* 124 Pac. Repr. 367; *United States* v. *Cassidy, supra; United States* v. *Debs, supra.*

It appears in this case the defendants are all engaged in a combination and conspiracy to commit a tort against the plaintiff. Just as the carriers are

bound to serve the public indiscriminately, so are their employees — and rightly so, for if the inhibition against discrimination did not apply equally to the employees as well as against the carriers themselves, the protection afforded the public would be negligible. It does not follow, however, that the relief sought by the plaintiff would impose involuntary servitude upon members of the defendant unions. No employee is forbidden to quit work by the injunction or to accept better employment if he may find it or to change his position as often as he sees fit. Every citizen is entitled to the same opportunity to procure a living, that is accorded any other. Equal protection is afforded everyone under our laws. The law cannot force any man to remain in the service of the public, but he has certain obligations when engaged in public service and is bound by public statutes as well as his employer. While it is indisputable that a man may enter any vocation that he chooses, yet if he sees fit to select a field indissolubly linked with the rights of the public, such as that of a common carrier, he must subserve his own rights to that of the public welfare and must at all times stand ready and willing to assume all of the exacting duties which he knows are owed the public. When he enters the public service he impliedly acquiesces in assuming all of these obligations. He must either get out of the transportation business or serve all persons alike.

Employees of steamships and those employed in and about the docks and all others associated in or connected with and necessary to the conduct of business of common carriers should perform their usual services regardless of whether the merchandise is worked upon, or handled, received or delivered by union or non-union men, and such service should be impartial and uninterrupted. The plaintiff is not asking anything unjust or unfair in insisting upon the free use

of the transportation lines. It does not lie with union leaders to lay down the proposition that the last word in deciding what merchandise shall or shall not be transported, should vest exclusively in them.

This is a case where the court may properly say to the members of these defendant unions: " You are not constrained to remain in the employ of common carriers but, if you choose so to do, your duty is to serve all members of the public alike and you must handle the lumber of this plaintiff as well as that of any other members of the community." *Matter of Lennon, supra.*

It appears herein that the carriers, whatever be their motive, have united with the unions in an unlawful scheme, contrary to positive statutory provisions, to bar the plaintiff's goods from transportation. The nature of the inducements offered by the unions in order to prevail upon the carriers to join the unlawful party, is immaterial. Economic pressure, like threats of injury to business, has induced many competitors to join the unlawful combination which threatens injury to their business, but such circumstances do not relieve the yielding party from legal responsibility for his acts. Likewise, the fact that the fear of a strike may have alone induced the carriers in this case to grant the unions' request that a crime be committed, does not constitute a defense. Undoubtedly the carriers want the plaintiff's business, but they also want to agree with their employees. When they had to choose between the two, they decided to join with their employees and violate the law of the land by discriminating against the plaintiff and even violating contracts for transportation of plaintiff's goods. The carriers joined the unlawful party to exclude the plaintiff's goods and, from the strategic nature of the position, became the principal actors in accomplishing the unlawful purpose.

The defendants, carriers and unions, are presumed to intend the natural consequences of their acts, and since they are acting, willingly or unwillingly, in furtherance of the common end of discriminating against plaintiff's shipments, each is bound as a conspirator by all the acts and statements of the others.

A civil action is maintainable by one who suffers injury as a result of a conspiracy forbidden by the criminal law, at the hands of the parties to the combination. *Rourke* v. *Elk Drug Co.*, 75 App. Div. 145; *Kellogg* v. *Sowerby*, 190 N. Y. 370.

" Just what relief may be granted if the combination is prohibited by the statute (Anti-Trust Law) it is not important now to determine, for I take it that if the combination or arrangement, as alleged in the complaint is declared by the statute to be against public policy, illegal and void, one who is directly affected by such an illegal combination or arrangement is entitled to appeal to the courts for redress either to restrain the continuance of the illegal acts which result from the illegal combination, or to recover the damages caused by such combination." *Straus* v. *American Publishers' Association*, 85 App. Div. 446, 449; 177 N. Y. 473.

Where an act is made criminal, any one of the group designed to be protected against such acts is entitled to the appropriate civil remedies against such acts. *Hayes* v. *Michigan Central R. R. Co.*, 111 U. S. 228; *Texas & Pacific R. Co.* v. *Rigsby*, 241 id. 33; *Toledo, A. A. & N. M. R. R. Co.* v. *Pennsylvania Co.*, 54 Fed. Repr. 730.

An examination of the cases of *P. Reardon, Inc.* v. *Caton*, 189 App. Div. 501, and *Reardon* v. *International Mercantile Marine Co.*, id. 515, cited in defendants' brief, shows that in the Reardon suit against the unions, there was no allegation as to the duties of common carriers and such question was not presented by the

record, as appears in the court's opinion, which says: " The plaintiff does not make the employers, or common carriers, or shippers of freight, parties to this action. * * * No common carrier or employer, or shipper or receiver of freight is before the court complaining of the defendants. * * * It will be remembered that on the record here presented no governmental agency, no common carrier or shipper or receiver of freight is before the court complaining of the defendants."

And Mr. Justice Jenks, in a concurring opinion, makes the same point clear, and says: " The facts, as Kelly, J., shows, do not present the issue of a common carrier who refuses carriage of goods."

And further in the case of *Reardon* v. *International Mercantile Marine Co.*, the injunction in this case was denied on four stated grounds, of which only No. 3, relating to the obligation of common carriers, has any application. In this connection the court said: " The action is based entirely upon the allegation that the defendant common carriers knowingly and wrongfully permit the workmen to refuse dealing with the non-union drivers of the league members. But each of the common carriers makes positive affidavit that the action of the dock laborers is without their assent and without their approval. No conspiracy between the common carriers and the dock laborers is pleaded or suggested. The affidavits for the carriers state that they are powerless in the matter, because if they discharge their men they can procure no one else to do the work which is of so great importance to the entire community. As already suggested, the plaintiff has not joined the labor organizations as parties defendant in the action. The preliminary injunction is unnecessary and uncalled for. If the injunction in the action against

the labor unions is sustained, there is no reason or necessity for enjoining the steamship companies."

On all these points the present case shows the contrary. It appears from the affidavits that the carriers acquiesced in the unions' demands and that the heads of the companies refused to transport.

They also show a conspiracy between the carriers and the unions to commit a violation of the Federal statutes by discriminating against plaintiffs' freight. And the carriers cannot be heard to state that they are powerless because in this same suit the injunction is sought against the unions to prevent the calling of strikes which might otherwise be called when the carriers perform their statutory duty.

There is an obvious necessity for issuing the injunction herein for there is no question of securing relief in another action.

It seems that either the relief must be granted in these suits or the common carrier duty to serve the public is annihilated when unions choose to discriminate.

The acts complained of, if they were committed, present a combination of unions and common carriers engaged in an unlawful conspiracy and illegal discrimination against the plaintiff under the authorities to which reference is hereinbefore made. The plaintiff is entitled to relief even though there is some doubt as to the outcome of this action. The subject matter of the litigation should be preserved *pendente lite*.

The papers sufficiently establish, for the purpose of the present application, and until the rights of the parties and the issues herein can be determined on a trial, the existence of an unlawful conspiracy on the part of the defendants and, therefore, the preliminary injunction as prayed for herein is granted.

Motion granted.