NEW YORK LUMBER TRADE ASSOCIATION and Others, Plaintiffs, *v.* MARTIN LACEY and Others, Defendants.

Supreme Court, Kings County, January 2, 1935.

*Gleason, McLanahan, Merritt & Ingraham* [*Walter Gordon Merritt, Franklin P. Ferguson* and *Walter K. Bennett* of counsel], for the plaintiffs.

*Rice & Maguire* [*Burton K. Wheeler* and *Edward C. Maguire* of counsel], for the labor union defendants.

*Burlingham, Veeder, Clark & Hupper* [*Ray Rood Allen* of counsel], for the defendant steamship companies.

HUMPHREY, J. This action is brought for a permanent injunction restraining the steamship company defendants from refusing to receive merchandise delivered to them by the plaintiffs and against the labor union defendants from interfering with the free use by plaintiffs of the shipping facilities centered in the port of New York. The case is submitted upon the proof offered by the plaintiffs, and it is upon that proof that the rights of the plaintiffs and obligations of the defendants rest.

The evidence produced can fairly be summarized as follows:

Contracts between the shipping company defendants and some of the labor union defendants expired at the end of August, 1934. New contracts were entered into between them and some of the labor unions. After such new contracts were entered into, the labor unions took the position with the steamship companies that none but union trucks and truckmen should be permitted to take goods from the wharves of the steamship companies or receive shipments which were not brought to the wharves by union truckmen.

Indeed, the first position taken by the labor union defendants was that goods would not be received or delivered by the steamship companies unless the manufacturing plants receiving consignments or shipping goods were unionized.

When the new plan was adopted by the labor unions, plaintiffs' trucks, which were not unionized, were stopped at the entrance to the wharves by representatives of the labor unions. The free use of the wharves was interfered with. Discussions took place between representatives of these plaintiffs, labor unions and the representatives of the steamship company defendants.

The labor unions receded from their original position that the manufacturing plants must be unionized before freight could be received or discharged, but adhered to their position that none but union trucks would have access to the wharves of the shipping company defendants.

Chambers of commerce and manufacturers' associations endeavored to persuade the labor union defendants and steamship companies that plaintiffs were entitled to the free use of the wharves, and the position taken by the labor union defendants and the steamship company defendants deprived the plaintiffs of the shipping facilities of the port.

Most of the trucks approaching the wharves which were not unionized were turned back at the gate without entering upon the docks of the shipping company defendants. Some few, however, did get upon the docks to pick up incoming freight and to discharge outgoing freight.

The employees of the shipping company defendants, especially the checkers employed by those companies, refused to check in or check out the shipments of these plaintiffs whose employees were not members of the teamsters' union or any of its branches. Occasionally trucks coming from a great distance were permitted as a favor by the labor union defendants to discharge their merchandise, and in those exceptional cases the goods shipped were checked and ordered on the ships of the defendants.

That situation prevailed at the time of the commencement of this action, and continued to prevail down to the commencement of the trial.

Since the commencement of the trial this regulation by the union defendants has been relaxed, but some of the plaintiffs are still sending their goods to New York by their own trucks, which are not unionized. In the streets of New York they are reloaded upon union trucks, and by these union trucks hauled a few blocks between the place of reloading and the wharves where the goods are received, checked and loaded by the steamship company defendants.

To the credit of the labor union defendants be it said that the foregoing has been accomplished without violence.

Counsel for both classes of defendants have very materially facilitated the trial by the production of documents and the voluntary appearance of officers of the defendants without subpoena and by stipulations concerning what witnesses would swear to if called.

Upon substantially the foregoing facts, what are the rights of the plaintiffs, and what are the obligations of the defendants?

At the outset it might be helpful to state that the steamship company defendants are common carriers. A common carrier has been defined to be one who is engaged in a public calling which imposes on it a duty to serve without discrimination.

Have the steamship company defendants, so far as the port of New York is concerned, lost their character as common carriers by limiting the free use of their shipping facilities to those shippers only whose truck drivers wear on their lapels a certain kind of button?

It seems clear that there has been a discrimination between shippers, and that these plaintiff shippers have had imposed upon them conditions and obligations which none of the defendants have the right to enforce.

A similar situation arose in 1922 in regard to the port of New York in which some of the defendants here were parties. They first came before the court on an application for a temporary restraining order, which application was granted, and on an appeal affirmed.

The trial thereafter took place and judgment was rendered which made permanent the temporary injunction which had theretofore been granted. No appeal was taken from the final judgment, and as far as appears from the record, the final judgment there was adhered to until shortly before the commencement of this action.

I am availing myself of the discussion and study made by the two justices of this court who sat on the motion and the trial which resulted in that judgment *(Burgess Bros. Co., Inc.,* v. *Stewart,* 112 Misc. 347; 114 id. 673).

Were it not for the question of jurisdiction which is raised on this trial, no further discussion would be necessary. The labor union defendants question the jurisdiction of the State court to pass upon and decide the question here presented. It is claimed by them that the Shipping Act (U. S. Code, tit. 46, chap. 23) provides a method whereby matters of this kind may be disposed of by the Shipping Board; that preliminary to an appeal to the courts, an appeal to the Shipping Board must take place, and that after the Shipping Board has taken action, only the Federal courts may entertain jurisdiction.

The labor union defendants are not subject to the jurisdiction of the United States Shipping Board. The definitions contained in the act are not broad enough to include them. No objection is here made by the shipping company defendants as to the quality of goods submitted for shipment by the plaintiffs, nor the method of packing. The only objection is the status of the plaintiff's truckmen as members of the labor union.

In construing the provisions of the Interstate Commerce Act the court held in *Baltimore & Ohio R.* v. *Brady* (288 U. S. 448), by Mr. Justice BUTLER: " But if the rule, regulation or practice of the carrier is not attacked and the shipper's claim is grounded upon its violation or discriminatory enforcement, there is no administrative question involved."

The right of the State court to entertain jurisdiction under the Interstate Commerce Act was upheld in *Pennsylvania R. R. Co.* v. *Sonman Coal Co.* (242 U. S. 120; 61 L. Ed. 188).

A similar situation presented itself in the case of *Chicago, R. I. & P. Ry. Co.* v. *Lawton Refining Co.* (253 Fed. 705). Indeed, the Secretary of the Treasury under the Shipping Act has authority to deny clearance to a vessel which refuses to receive freight without discrimination.

Unless the provisions of the Federal act exclude the State courts, concurrent jurisdiction exists. (*Robb* v. *Connolly,* 111 U. S. 624.)

The cases might be multiplied showing that the State courts and Federal courts are both clothed with jurisdiction, and whichever acts first does so to the exclusion of the other.

Provision is made for a transfer from the State court to the Federal court where diversity of citizenship exists. No such application was made in this case, and in the absence of such application the cause remains where it started.

The shipping company defendants profess their willingness to receive freight from or discharge freight to plaintiffs without discrimination, but assert that their employees, whom they have

the power to hire and fire, refuse to co-operate with them, and that, therefore, they are in a helpless situation.

This does not excuse them from their obligation to the public as common carriers, and though they reluctantly accede to the demands of the union their failure to exact obedience from their own employees makes them co-conspirators with the labor union.

The plaintiffs may have judgment restraining interference on the part of the labor union defendants, and mandatory relief against the steamship company defendants requiring them to receive and clear plaintiffs' shipments without discrimination.

Settle findings on notice.