(69 App. Div. 273.)

LYTLE et al. v. CRAWFORD et al.

(Supreme Court, Appellate Division, First Department. February 14, 1902.)

1. WITNESSES—COMMUNICATIONS FROM ATTORNEY—EVIDENCE—QUESTION FOR JURY.

A defendant testified that he consulted certain lawyers at the instance of a third person. He then stated that he did so at his own instance. He later said he did so at the instance of an agent of plaintiff. He also stated that he was uncertain whether the agent referred him to the lawyers before or after the conversation with them, and finally said that it was before. *Held*, that it was for the jury to determine whether plaintiff's agent referred him to such lawyers.

2. ATTORNEY AND CLIENT—GENERAL RETAINER—POWER OF ATTORNEY.

An attorney under a general retainer to prosecute a claim against a person cannot, in the absence of a reference by his client of such person to him for information, bind his client by admissions or advice prejudicial to the client's cause of action.

3. TRIAL—DIRECTING VERDICT—EVIDENCE—SUFFICIENCY TO AUTHORIZE A CONTRARY FINDING.

In an action for money had and received, it appeared that plaintiff sold cotton to a third person, who gave his check on defendant. The purchaser delivered the warehouse receipts to defendant to meet the check. Defendant refused to pay the check in cash, and tendered certain notes against plaintiff. This was refused, and defendant was requested to return the check, and this was refused. Thereafter the purchaser gave plaintiff his duebill, and agreed to deliver the cotton receipts. The purchaser obtained the receipts, but did not deliver them to plaintiff, but instead procured a bill of lading for the shipment of the cotton, drawing his draft for payment upon the cotton, and delivered the bill of lading and draft to defendant, who afterwards received the proceeds. Defendant charged the check to the purchaser's account, and, after hearing of the subsequent transaction, credited the purchaser with a corresponding amount, and in effect canceled the check transaction. Defendant testified that an attorney told him that the check transaction was canceled, that the purchaser had given his duebill for the cotton, and that the check was of no value, and should be returned

to the purchaser. *Held*, conceding the admissibility of defendant's testimony, that, though the new transaction might be regarded as vesting in the purchaser the absolute.title to the cotton, the facts would authorize a jury to find to the contrary, and hence the direction of a verdict for defendants was error.

4. NOTE—JUDGMENT—MERGER.

A holder of a promissory note, after taking judgment thereon, cannot prove the note as an indebtedness by offering the judgment as evidence, the note being merged in the judgment.

5. NEW MATTER—RES JUDICATA—NECESSITY OF PLEADING.

Under Code Civ. Proc. § 500, providing that any new matter constituting a defense or counterclaim must be pleaded, a defendant cannot offer a judgment in another court showing that the matters in litigation were disposed of in such other court, without pleading the judgment as new matter constituting a defense, such judgment not controverting or disproving anything which the plaintiff was required to prove, and hence being inadmissible under the general issue.

6. SAME—MATTER ARISING AFTER COMMENCEMENT OF SUIT—SUPPLEMENTAL PLEADING—NECESSITY.

A judgment rendered after the commencement of an action, and after the time of defendant's answer to the complaint therein, is unavailable as a defense in the absence of a supplemental pleading, as provided by Code Civ. Proc. § 544, providing for supplemental pleadings alleging facts occurring after the former pleading.

7. FAILURE TO FILE SUPPLEMENTAL PLEA ON LEAVE GRANTED—EFFECT.

Where a defendant, on application, obtains on terms leave to file a supplemental plea alleging a certain judgment as a defense to the action, but goes to trial without filing such plea and complying with the terms imposed, he cannot thereafter avail himself of a plea setting up such judgment.

Appeal from trial term, New York county.

Action by Robert A. Lytle and another against James R. Crawford and others. From a judgment for defendants and an order denying a new trial, plaintiffs appeal. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

William L. Mathot and Harry L. Herzog, for appellants.

Percy S. Dudley, for respondents.

HATCH, J. This action is brought to recover for money had and received by the defendants for the plaintiffs' use, and the complaint contains appropriate averments to state such cause of action. The answer, after admitting the copartnership of the respective parties as averred in the complaint, denies the allegation of any sum due from the defendants to the plaintiffs. The answer then sets up counterclaims upon three separate promissory notes executed by the plaintiffs, which were held and owned by the defendants, and demands judgment that the complaint be dismissed, and that the defendants have judgment for the amount of the several counterclaims. To this answer a reply was served denying each and every allegation of the matter averred in the counterclaims. This action was commenced on or about November 14, 1892. It appeared from the evidence given upon the trial that the plaintiffs were cotton brokers doing business at Dothan, in the state of Alabama, and that the general manager of such business was one Bower; that in the month of November, 1892, and prior to the commencement of this

action, Bower, acting as such manager, sold to one Drewry 45 bales of cotton, the purchase price of which was $1,566.12. At the time of the sale Drewry delivery his check drawn upon the defendants, who were engaged in the banking business at said place, to Bower, for the purchase price of the cotton, and thereupon Bower delivered receipts for the respective bales of cotton to Drewry which were stored in the warehouse, and which were necessary to procure a delivery of the same. Drewry delivered these cotton receipts to the defendants. A short time after the transaction a bookkeeper in Bower's office presented the check to the defendants for payment. The latter tendered in payment of the same $427.42 in cash and the three notes of the plaintiffs set up in defendants' counterclaims, then past due, and amounting, with interest, to $1,134. These two sums equaled the amount of the check and another check drawn by a third person and presented at the same time for $5.30. The bookkeeper refused to take the notes in payment of the check, or to receive the cash, unless the whole amount was paid in money, and shortly thereafter demanded a return of the checks or their payment in money. This was refused, except that thereafter the defendants tendered to the plaintiffs the amount of the small check. It appeared that plaintiffs claimed that the notes were forgeries, or, for some reason, that they were not liable thereon, but no evidence was given upon that subject. After the refusal to pay the check in money or to return the same, Bower notified Drewry of the situation, and thereupon these parties entered into a new arrangement respecting the cotton. The testimony of the plaintiff tended to establish that Drewry, under the latter dealing, was to give and did give a duebill for the cotton, and was to procure from the defendants the cotton receipts, and deliver the same to Bower, and the duebill was to be paid from the proceeds of the cotton by Savannah exchange or otherwise. Presumptively, the arrangement was to make the cotton security for the payment of the duebill. Drewry obtained the cotton receipts from the defendants, but did not deliver them to Bower, nor did he take any other steps in further fulfillment of this agreement, except to make and deliver his duebill to Bower. On the contrary, after receiving the receipts for the cotton from the defendants, he delivered the same to his drayman, procured a bill of lading for shipment of the cotton, drew his draft for payment upon the cotton, and delivered the bill of lading and the draft to the defendants, which was paid from a sale of the cotton, and the defendants received the proceeds. When Drewry's check was received by the defendants, they charged the same to Drewry's account, but, after learning of the subsequent transaction between Drewry and Bower, they credited Drewry's account with a corresponding amount, and, in effect, assumed to cancel that transaction. Drewry testified that the check was never in fact delivered to him, but the defendants testified that it was so delivered, but was subsequently procured from him for the purpose of use in an action brought in a court in Alabama wherein these defendants were plaintiffs and these plaintiffs were defendants, and that the check is now a part of that court's record. The last-named action was commenced by an at-

tachment on the 30th day of November, 1892. The complaint was filed on March 20th, 1893, and, as appears thereby, the cause of action was based upon the same promissory notes which form the counterclaims alleged in defendants' answer in this action. Issue was joined therein by the filing of an answer on March 30, 1893. In such answer the defendants set up the conversion of 50 bales of cotton by the plaintiffs, of the value of $1,500, which sum they asked to set off against the plaintiffs' cause of action. The cotton alleged in the answer to have been converted is the same cotton for which the plaintiffs seek to recover in the present action. Other pleas of usury and forgery were interposed in that answer. Issue having been thus joined on March 9, 1897, a trial was had in the circuit court of Dale county, in the state of Alabama, and judgment was rendered therein in favor of the plaintiff for $1,641.09, with costs, but the amount of the costs awarded does not appear in the judgment.

It appeared upon the trial of this action that $1,900 had been paid upon this judgment, and that the whole amount due thereon was nearly $2,400. It did not appear, however, that the judgment itself had ever been discharged of record. The judgment roll in the Alabama action was offered in evidence, and was objected to, among other grounds, as not having been pleaded. The court overruled the objection and received the evidence, not for the purpose of defeating the present cause of action, but as evidence of the validity of the counterclaims set up in the answer. What effect the court gave to this judgment when it came to direct a verdict does not clearly appear. Upon this state of the record, several very interesting questions arise. The trial court seems to have held that the information which the defendants claimed to have received that the original transaction in the sale of the cotton had been superseded by the subsequent arrangement between Bower and Drewry, whereby the latter took from the former a duebill, authorized the defendants to deal with Drewry as the owner of the cotton, relieved from any rights which the plaintiffs had acquired against them by reason of the nonpayment of the check. Upon that subject it appeared that, after the payment of the check in money had been refused, Bower consulted with the firm of Pearce & Pace, lawyers, residing at Dothan, in respect to plaintiffs' legal rights in the matter. The defendant James R. Crawford testified upon this subject that after the check had been presented he saw Drewry, and in consequence of a conversation had with him he went to the lawyers' office, where he had a conversation with Mr. Pace. Subsequently he testified that he had a communication with Bower, the next day after the check was presented, and that the latter referred him to the lawyers, he stating that Bower said "he had nothing further to do with it; that his attorneys would handle it." He further testified that he relied upon what Pace told him as a friend. Subsequently he said, in speaking of his talk with Bower: "I think it was before I went to Pearce & Pace, or just after. I think possibly after,—probably after. I would not be positive as to that. I went to Pearce & Pace at Drewry's suggestion, and Pearce & Pace were friends of mine, and had been my attorneys. They represented us in some cases."

Again, in testifying as to Bower's reference to his attorneys, he said: "I would not be positive whether it was before or after. I think, though, it was before." And again he says: "My recollection is, Drewry came to me first, and told me the transaction had been canceled, and that I went with him to Bower, and Bower referred me to Pearce & Pace, and I then went to them." And again: "Drewry suggested to go to them; that they were his lawyers. Q. That they were Drewry's lawyers? A. No, they were Lytle & Co.'s lawyers. He told me the new transaction had been consummated in their office. I went to Bower afterwards, and tendered him this $5.30." Upon this subject Bower testified that when Crawford came to him to pay the $5.30 he may have referred him to the lawyers, but had no distinct memory upon that subject. The defendant testified that when he called at the office of Pearce & Pace the latter told him that the check transaction had been canceled, and that Drewry had given Lytle & Co. his duebill for the cotton; that he then asked him about the check that Drewry had given, and Pace said it was not worth anything, and should be returned to Drewry, as they had made a new sale. The defendants claimed that pursuant to this transaction they canceled the check by crediting Drewry with its proceeds. The plaintiffs objected to the introduction of the conversation which the defendant had with the lawyers. Assuming for the moment that the conversation was admissible, and that Pearce & Pace had authority to make a statement which would be binding upon the plaintiffs, it is by no means clear that the defendant applied to the lawyers by virtue of any authority given by the plaintiffs through Bower or otherwise. The defendant's first statement is that he applied to the lawyers at the instance of Drewry; and again, at his own, as friends of his; and again on account of Bower's reference, and then was uncertain whether Bower's reference was before or after the conversation; that it was when he went to tender the $5.30, which he states was after his conversation with the lawyers; and, finally, that he was referred by Bower to them before the conversation. It is clearly evident that upon these conflicting statements a question of fact was presented for the jury as to whether Bower ever referred him to the lawyers, and, if so, whether before or after such conversation. If the defendant went to the lawyers at his own instance, or at the instance of Drewry, or for the purpose of getting advice, it is plainly evident that the conversation would not be admissible, nor binding upon the plaintiffs. Bower was not present, nor any person representing the plaintiffs at the time, and nothing contained in this record shows that the attorneys were authorized to bind the plaintiffs by any information which they might impart. Whether or not Bower referred the defendants to the lawyers is left uncertain under the testimony, and Crawford, who gave it, was an interested witness; so that upon this subject, as the conversation would be inadmissible unless Bower especially referred the defendants to them for information, whether he so referred them, and authorized thereby information to be imparted, was clearly a question of fact for the jury. This is the most favorable view to which the defendants were entitled under the circumstances of this

case. But we are of opinion from all that appeared that the attorneys had no authority to make any admissions or give any directions binding upon the plaintiffs. While attorneys engaged in the actual management of a cause may bind their clients by admissions while so engaged or by statements and correspondence relating thereto, yet they have no authority under a general retainer to compromise an action, or to bind a client by statements that he has no cause of action, or that he has surrendered whatever rights he possessed. It does not appear in this case what the engagement of the attorneys was, or just what authority had been given to them. The most that can be inferred is that of a general retainer to prosecute a claim against the defendants, and it would be a great stretch of authority to hold that under such circumstances they could advise the party against whose interest they were retained, or make statements upon which such person might act, and thereby create an estoppel against the client whose interests they were retained to protect. Mandeville v. Reynolds, 68 N. Y. 528; Welsh v. Cochran, 63 N. Y. 181, 20 Am. Rep. 519; Wilson v. Railroad Co., 53 Cal. 735; Durfee v. Abbott, 50 Mich. 278, 15 N. W. 454. This testimony was material, and the statement was controlling if it was made by the plaintiffs, or authorized by them. In effect, it was a statement that plaintiffs, by another transaction, had vested absolute title to the cotton in Drewry by virtue of a contract subsequent to the first sale, out of which the indebtedness here sought to be enforced arose, and which was entirely independent thereof. It is manifest that, if such was the fact, the defendants would have the right to deal with Drewry in respect to the cotton as owner, and, if he were such owner by virtue of the subsequent arrangement, the authority to enforce payment of the check, which was given upon the first sale, would cease, and no rights in favor of the plaintiffs could accrue therein. Consequently, the testimony was of controlling importance, and was so treated by the court in the disposition of this case. The jury were authorized, however, to find from the testimony that Bower did not sell the cotton to Drewry and take in payment this duebill; that the execution and delivery of it constituted only a part of the transaction; and that no title to the cotton vested in Drewry under that transaction, and that he acquired no rights therein. This conclusion would result in a reversal of this judgment, unless it became immaterial in view of other considerations.

The defendants, upon the trial, did not produce the notes which they set up in their respective counterclaims, unless the Alabama judgment established them. It may be said that this testimony did establish that the notes once had an existence, but at the same time it conclusively established that they had ceased to exist as notes, had become merged in the judgment, and could no longer be declared upon as such as valid counterclaims of otherwise. Nicholl v. Mason, 21 Wend. 339; Candee v. Smith, 93 N. Y. 349. The judgment, therefore, was not evidence to establish the counterclaims; on the contrary, it destroyed them. As the judgment, however, was received, we come now to consider its effect. It is the contention of the defendants that the judgment was conclusive according

to the finding thereof, so as to estop the parties respectively from again litigating the fact so tried and found, whether it be pleaded in bar or given in evidence; and such undoubtedly is the law, if the judgment was competent for any purpose within the issue presented by the defendants. It is the contention of the respondents that it was admissible under the general issue which is raised by the answer. It is undoubtedly the rule that under the general issue "the defendant may controvert by evidence anything which the plaintiff is bound to prove in the first instance to make out his cause of action, or anything that he is permitted to prove for that purpose under his complaint." Milbank v. Jones, 141 N. Y. 340, 36 N. E. 388. This evidence, however, did not controvert, disprove, or tend to overthrow anything which the plaintiffs were required to prove as constituting their cause of action. It did not bear thereon. Its effect was to bar a right of recovery by matter entirely extrinsic to the cause of action as proved by the plaintiffs. In other words, it said, admitting the cause of action averred and proved, it is defeated by new matter and new conditions entirely independent of it. The rule, to the extent claimed by the defendants, is not now the law. By section 500 of the Code of Civil Procedure it is required that new matter constituting a defense or counterclaim must be pleaded, and without such plea it is not available. Section 149 of the old Code contained the same provision, and was so construed (McKyring v. Bull, 16 N. Y. 297, 69 Am. Dec. 696); and such is the construction of the present provision (Linton v. Fire-Works Co., 124 N. Y. 533, 27 N. E. 406). The purpose of compelling such a plea is perfectly plain. The plaintiff is entitled to be apprised of any new matter which tends to defeat his cause of action, in order, if he have answer thereto, that he may be prepared to establish it. In the present case the plaintiffs became entitled to attack this judgment as obtained by fraud, or that the court was without jurisdiction to render it, or to prove any other matter which might overthrow it, and for this reason the provision is salutary, and should be enforced.

The judgment, however, was not available for another reason, and it seems would not have been available for that reason under the general issue, if otherwise it might have been. The judgment itself was not rendered until nearly five years after the commencement of this action. In order, therefore, to have made it available as a defense, it became necessary for the defendants to apply for leave to set it up by way of supplemental pleading. Code Civ. Proc. § 544; Boone, Code Pl. § 40. It appears from the record that the defendants understood their rights and obligations in this respect, as they applied before the trial at special term to amend their pleading by setting up the judgment. Leave was granted upon payment of costs. The defendants never complied with the terms imposed, and no pleading, supplemental or amended, was ever served. In no view, therefore, and for no purpose, was this judgment admissible; and, inasmuch as the defendants went to trial with full knowledge of all their rights and obligations in the premises, they should not hereafter be permitted to avail themselves of a supplemental plea setting up this judgment.

It follows from these views that the judgment and order should be reversed, and a new trial granted, with costs to the appellant to abide the event. All concur.