In the Matter of the Estate of CARMELA TUOZZOLO, Deceased.

Surrogate's Court, Kings County, October 4, 1932.

*Herman M. Goldberg,* for the petitioner.

*Samuel M. Brook,* special guardian for infants Carmela and Dora Taurello.

*John H. Waters* and *Herberts T. Staub,* for the respondent James Taurello.

WINGATE, S. Slightly over a year ago, in a construction proceeding respecting the will of the present decedent, this court was greatly edified by an apparently perfect example of family solidarity and filial devotion. Its laudatory comments on the attitude of the parties interested have become legal history, and are recorded in volume 141 Miscellaneous Reports beginning at page 251. The facts disclosed on the present accounting in this estate clearly indicate that these encomiums were premature if not indeed precipitate.

The decedent, Carmelia Tuozzolo, executed the will in question on June 26, 1930, and died six months and four days later. She had been twice married and adult offspring of both unions survived her. At the time of her death she was possessed of no personal estate whatsoever, but was the owner of two parcels of realty, one located on Adams street, and the other on Coney Island avenue, Brooklyn. Her testamentary plan contemplated dedication of the beneficial enjoyment of the former to the children by her second marriage, and of the latter, to those by the first. The sole difficulty presented by the terms of the will was that she also gave general pecuniary legacies of $200 each to two grandchildren, and of $1,500 to a son of the first marriage. The motive of the latter gift was apparent from the language of the will, which recited that she had made advances to this son and that in consequence thereof, the pecuniary benefaction included would place him on a parity with her other children. At the time of the construction proceeding an affidavit was presented by one of testatrix's daughters which recited affiant's knowledge of the belief of the testatrix that the terms of her will would effect the equality of division because the children of her first marriage which she had in mind, since the value which the Coney Island avenue property possessed, was such that if the pecuniary legacies were deducted therefrom, the devisees of this

property, and the son who had been remembered only in a pecuniary manner, would receive benefits of approximately equal amounts.

The prayer on the construction was that the pecuniary legacies should be determined to be a charge upon the Coney Island avenue property. Attached to the petition were two documents executed by all of the devisees of the Coney Island avenue property other than one daughter who was an incompetent. The first was an executed and acknowledged consent that the pecuniary legacies should be construed to be such a charge, and the second was a direction by all of the devisees who were *sui juris*, authorizing the executor and attorney of the estate to charge against the respective shares of the signers, *pro rata*, the amounts of the pecuniary legacies in the event that the determination of the court was adverse to the legality of the charge.

The last paragraph of this document is worthy of repetition in its entirety. It reads as follows: " This authorization is given to the said executor and/or our said attorney, for the reason that we are informed that there is no provision in the will of our deceased mother whereby certain legacies in the sum of $1,500 to our brother, James Taurello, and $200.00 each to our nieces, Carmela Taurello and Dora Taurello, are made chargeable against the real estate devised in the will, and inasmuch as our deceased mother left no personal estate, there is no fund available wherewith to meet the aforesaid legacies, and we, out of a sense of fairness, and in an endeavor to carry out the wishes of our deceased mother, hereby agree that the aforesaid legacies shall be chargeable against the real estate devised to us under the will, and therefore agree to make the payments of the said legacies, each in accordance with his interest in the said real estate, as hereinabove set forth."

The construction proceeding was submitted without argument and without the introduction of any evidence whatsoever respecting the circumstances surrounding the testatrix at the time of the execution of the will. This fact was commented upon by the court in its former opinion at page 253. It is, of course, familiar law that had a testimonial demonstration been made that at the time of the execution of the will testatrix possessed no personal property whatsoever from which to satisfy the general legacies in question, and was aware of that fact, a charge thereof upon one or both of the devises would have been the natural if not the inevitable result. In view of the lack of testimonial demonstration in this respect, however, the general rule of law that pecuniary legacies are payable only from personalty became necessarily applicable. (*Matter of Lilienthal*, 139 Misc. 225, 228, and cases cited.)

On the facts as then disclosed, namely, the absence of personalty,

and the proximity in point of time of the death to the execution of the will, there was a more or less strong factual inference that the testatrix intended a charge, but since inferences do not run backward (*Matter of Auditore*, 136 Misc. 664, 681; affd., 233 App. Div. 740; *Matter of Smith*, 136 Misc. 863, 871), this could not be applied in the decision, with the result that the legacies were held not to be chargeable upon the realty.

In last analysis, however, the question of whether or not the law would imply a charge on the specifically devised properties in favor of the general legacies, appeared wholly academic as a result of the attitude of the devisees of the Coney Island avenue property and their authorization to the executor to pay the amounts of the general legacies from the proceeds of their benefits in any event. The court regarded it as such and it seems obvious that the general legatees were unquestionably lulled into a feeling of security by the acts of the devisees and by the filing and recording of this duly executed instrument.

The present proceeding, which is for a settlement of the accounts of the executor, seeks to distribute the estate in his hands without making any payment to any of the general legatees. In defense of such position it is claimed that some seven months after the decision of this court construing the will and the filing and recording herein of the authorization for payment of the general legacies from the proceeds of the Coney Island avenue property, which has been noted, the devisees thereof delivered to the executor a letter purporting to countermand and revoke the authorization for such a payment.

On the present occasion the entire matter has again been submitted for decision without argument or the introduction of testimony. The question is, therefore, presented whether, under the circumstances recited, and granting that the Coney Island avenue devisees actually did serve such revocation upon the executor in January of this year as claimed, the result must be a determination that the two infant legatees, and the brother to whom the general legacy was given, are without any rights.

It has been suggested that such rights may be held to exist as a result of an application of the principles enunciated in *Lawrence v. Fox* (20 N. Y. 268). It is unquestionable that the instrument executed by the devisees of the Coney Island avenue property was, as between the signers thereof, a valid and enforcible contract with mutual promises as a consideration, and it is urged that this contract having been made for the benefit of testatrix's grandchildren and the son James, is enforcible by them directly, as the third parties intended to be benefited thereby. In support of this

position might be cited *Knowles* v. *Irwin* (43 Hun, 150, 152, 153; affd., 124 N. Y. 633); *Buchanan* v. *Tilden* (158 id. 109, 123); *Matter of Schmoll* (191 App. Div. 435, 441; affd., 230 N. Y. 559) and many other cases of like nature. Were this the only theory upon which the rights of these parties could be protected, their manifest equities would strongly incline the court to lend an ear to this thought. It is unquestionable, however, that such a decision would amount to an extension of the doctrine of these cases, since there is obviously, in the present case, no direct legal obligation upon these devisees for the support or advancement of the welfare of the general legatees, which circumstance has been stressed in the cases just cited as a basis for relief in favor of the third parties to be benefited.

The executor and devisees have, in their briefs, assumed and contended that the only theories upon which recovery could be granted to the general legatees on the facts shown were (a) that the document executed by the devisees constituted a contract between them and the general legatees, or (b) an assignment by the former to the latter, or (c) an equitable assignment. Having erected these straw men, they have proceeded with no little thoroughness to demolish them. It is, of course, entirely obvious that no direct contract exists between these parties since the pecuniary legatees were not parties to the instrument and consequently there was no mutuality of obligation between them and the devisees, and the same condition precludes the existence of a legal assignment. Finally, no equitable assignment can be spelled out by reason of the fact that there was no consideration moving from the general legatees to the devisees. (*Farmers' Loan & Trust Co.* v. *Winthrop*, 238 N. Y. 477, 487; *Tallman* v. *Hoey*, 89 id. 537, 540.)

In their enthusiasm in the destruction of the effigies which they have erected, however, the devisees appear to have overlooked two bases for recovery, either of which, in the opinion of the court, would suffice for the purpose.

The first of these is the principle of estoppel by reason of the apparent waiver of rights by the devisees of the Coney Island avenue property to take the proceeds of that property unimpaired by a charge in favor of the general legatees.

In *Lord Construction Co.* v. *Edison Portland Cement Co.* (234 N. Y. 411) the following may be found (at p. 415): "Waiver is the voluntary giving up of a known right. It may be established by conduct. When established, an estoppel may be based thereon which bars the subsequent assertion of such right."

This principle is further developed in *Alsens American Portland Cement Works* v. *Degnon Contracting Company* (222 N. Y. 34, 37):

" A waiver is an intentional abandonment or relinquishment of a known right or advantage which, but for waiver, the party would have enjoyed. It is the voluntary act of the party and does not require or depend upon a new contract, new consideration or an estoppel. It cannot be recalled or expunged. * * * It is essentially a matter of intention. Negligence, oversight or thoughtlessness does not create it. The intention to relinquish the right or advantage must be proved. Occasionally it is proved by the express declaration of the party, or by his undisputed acts or acts or language so inconsistent with his purpose to stand upon his rights as to leave no opportunity for a reasonable inference to the contrary. Then the waiver is established as a matter of law." (See, also, *Draper* v. *Oswego County Fair Relief Assn.*, 190 N. Y. 12, 16; *Ansorge* v. *Belfor*, 248 id. 145, 150.)

It is entirely obvious from the recital of the facts hereinbefore noted, that the entire case as presented at the time of the construction proceeding, was permeated by the action of the Coney Island avenue devisees in representing that whether or not a legal charge of the general legacies upon their devisees was adjudicated, the pecuniary benefits given by the will should be paid in any event. By this action they made the determination of that question in essence academic; that the court so treated it is apparent from the last paragraph of its opinion; that the son and the special guardian for the infant legatees relied thereon and were thereby lulled into a sense of security, is obvious from the fact noted on the same page of the opinion, that no evidence of the circumstances surrounding the testatrix at the time of the drawing of the will was introduced. It would seem apparent that such testimony, sufficient to produce a contrary result, was readily available from the mouth of one of the present opponents of these legatees. This is obvious from a casual reading of the affidavit of Lucy Taurello, verified July 14, 1931, and filed in that proceeding, when coupled with the statement contained in the petition that the deceased, at the time of her death, possessed " no personalty whatsoever."

These facts bring into play the principle stated with peculiar clarity by the Appellate Division of this department in *Witherell* v. *Kelly* (195 App. Div. 227, at p. 231): " As a rule, to constitute such an estoppel there must be representation as to a fact past or present, but there is a well-recognized exception that applies in this instance. After statement of the general rule, the court in *Insurance Co.* v. *Mowry* (96 U. S. 547) says: ' The only case in which a representation as to the future can be held to operate as an estoppel is where it relates to an intended abandonment of an existing right, and is made to influence others, and by which they have been induced to

act. * * * The doctrine of estoppel is applied with respect to representations of a party, to prevent their operating as a fraud upon one who has been led to rely upon them.' * * * In *Faxton* v. *Faxton* (28 Mich. 159), a case essentially like the case at bar, the court per CAMPBELL, J., say: ' There is no rule more necessary to enforce good faith than that which compels a person to abstain from enforcing claims which he has induced others to suppose he would not rely on. The rule does not rest upon the assumption that he has obtained any personal gain or advantage, but on the fact that he has induced others to act in such a manner that they will be seriously prejudiced if he is allowed to fail in carrying out what he has encouraged them to expect.' " (See, also, *Continental National Bank* v. *National Bank of Commonwealth*, 50 N. Y. 575, 581, 583, 585, 586.)

It is entirely possible, as indicated in the affidavit of one of the devisees in this proceeding, that the latter experienced a change of heart between the time of the application for construction and the present time, and that on the former occasion they honestly intended to benefit the general legatees. This, however, is immaterial in this connection as is noted in *Voorhees* v. *Olmstead* (3 Hun, 744, at p. 754; affd., 66 N. Y. 113): " It is not necessary to an equitable estoppel, that the party should willfully intend to mislead, nor that the party who claims the estoppel shall have acted affirmatively upon it. It is enough if he have been induced thereby to refrain from such action as lay in his power, by which he might have retrieved his position and saved himself from loss."

It would be inequitable in the extreme were these devisees to be permitted to change their position after their brother and the special guardian for their infant nieces have been induced to rely thereon. The law is well established that courts will not permit such inequitable conduct. Innumerable citations to that effect might be supplied but a reference to the pronouncement of the Court of Appeals in *Rothschild* v. *Title Guarantee & Trust Co.* (204 N. Y. 458, at p. 464) will be sufficient.

The application of this principle would appear sufficient for a determination of the present issue adversely to the devisees of the Coney Island avenue property. There is, however, an additional basis upon which a similar result might be attained. The final paragraph of the agreement of May 14, 1931, signed by these devisees, which has hereinbefore been quoted, reads in part as follows: " We * * * hereby agree that the aforesaid legacies shall be chargeable against the real estate devised to us under the will * * *."

It is obvious that the benefits to these devisees, being in the form

of an absolute devise, vested the specified property in them as tenants in common under the decision in construction heretofore made by this court subject to the debts of decedent and the administration expenses of the estate. (*Matter of Surpless*, 143 Misc. 48, 51; *Matter of Anable*, 139 id. 914, 918.) They were thereby vested with a legal estate in the property in question which was alienable by them in the same manner as any other property which they might possess or of which they might be seized. (*Matter of Leverich*, 135 Misc. 774, 783; affd. on the opinion of this court, 234 App. Div. 625.) If they possessed the legal right to alien their interests in this property, in whole, they might, obviously, also do so in part. In other words, since they could sell their interests outright, they might mortgage, pledge or otherwise incumber them.

In the opinion of the court, the language quoted was entirely appropriate to effect a present gift of a charge or lien upon their interests in the property devised, by way of security for the pecuniary legacies given to their brother and nieces. In this regard the situation is analogous to one which would exist if A owed B a debt. A being financially irresponsible, C gives B a mortgage on certain property belonging to him, to stand as security for A's debt. Under such circumstances, no one would have the temerity to maintain that upon A's default in payment, B would be denied the security granted him. Such a transaction unquestionably arises with frequency in commercial dealings, where a material consideration passes from B to C. There is, however, no reason in law or equity why the giving of such security should be accompanied by legal advantage to C or detriment to B. The transaction would unquestionably be equally valid if in the form of an executed gift from C to B. The facts in the case at bar pertinent to this inquiry possess all the requisites to a valid, executed gift of such security. (*Matter of Dunne*, 136 Misc. 250, 251; affd., 232 App. Div. 831.) It must, therefore, be determined that the general legacies to James Taurello in the sum of $1,500, and to Carmelia Taurello and Dora Taurello in the sums of $200 each, are valid and enforcible charges against the Coney Island avenue property devised to Emidio, Lucy, Elizabeth and Margaret Taurello.

Proceed accordingly.