In the Matter of the Estate of MICHAEL LARNEY, Deceased.

Surrogate's Court, Kings County, September 14, 1933.

*Edgar Salmon,* for the petitioner.

*Joseph E. Keenan,* for the executor.

WINGATE, S.   In *Matter of Sharff* (136 Misc. 627, 630) the question was inferentially raised as to whether the terms of a testamentary bequest could be so phrased as to give rise to an actual contractual relation with the named beneficiary.   The determination of this point was unnecessary in that case and it was not decided. It is, however, expressly presented in the case at bar.

The present proceeding was instituted under section 216 of the Surrogate's Court Act by an undertaker for the payment of his funeral bill in the sum of $1,002.40 for conducting the obsequies of the deceased.

The answer of the executor alleges that decedent's will, heretofore duly probated, reads in part as follows:

" *Third.* I give and bequeath to my friend Joseph E. Brennan of 1817 Nostrand Avenue, Brooklyn, for the purpose of my burial, the proceeds of the bond and mortgage in the amount of One thousand ($1,000.00) Dollars and interest and covering premises 3rd Avenue and 31st Street, Brooklyn (Princess Construction Co.)."

It is further alleged that the petitioner was fully apprised of the foregoing provision before he buried the decedent, that the specified mortgage has been tendered him in payment of the funeral bill and has been refused and that the executor has offered to sell the mortgage in the open market and turn over the proceeds in satisfaction, which offer has also been declined.

Since this is an affirmative defense, which under the system of pleading in operation in this State is deemed to have been traversed or confessed and avoided (Civ. Prac. Act, § 243; *Whipple* v. *Brown Bros. Co.*, 225 N. Y. 237, 240), thus raising a triable issue, the submission of the controversy on the pleadings, without the introduction of proof, can be viewed only as a motion for judgment on the pleadings which is equivalent to a demurrer under common-law procedure. (*Matter of Kirkman*, 143 Misc. 342, 343; *Matter of Duggan*, 146 id. 596, 597.) It is so treated in the brief of the moving party. No memorandum has been submitted on behalf of the respondent.

The argument of the petitioner relies on the supposed analogy of the present situation to the cases which determine that an executor is entitled to his statutory commissions at his election, in spite of a bequest to him in lieu thereof. This argument, however, overlooks the fact that the authority of the executor in this regard is the result of an express statutory enactment, section 285 of the Surrogate's Court Act, reading in part: " Where the will provides a specific compensation to an executor, administrator, guardian or testamentary trustee, he is not entitled to any allowance for his services, unless by written instrument filed with the surrogate, within four months from the date of his letters  *  *  *  he renounces the specific compensation."

It has been determined that the effect of this enactment is inferentially to entitle executors to the statutory compensation upon a filing of the required renunciation, the *rationes decidendi* being that " There is no hardship or injustice  *  *  *  in this construction of the clause in question. Persons who make wills are supposed to know the law; and when they provide a specific compensation for their executors in lieu of commissions, they must be deemed to be aware that the statute gives their executors a right

to elect between that compensation and the usual commissions." (*Matter of Arkenburgh*, 38 App. Div. 473, 477.)

The very fact that it was deemed necessary to make an express statutory enactment to endow executors with a right to receive a compensation for their services greater or different from that stipulated by the testator, would, in view of basic principles of contract and estoppel, seem to argue the existence of a grave question as to whether such right would exist in its absence.

However this may be, it is obvious that the considerations involved in such a situation are vastly different from those presently presented. The adoption of statutory rates of compensation for testamentary fiduciaries implies that in legislative contemplation, which, in view of the representative character of our government, means in the opinion of the people at large, the remuneration specified in the statute is that which is reasonable for the service required. The payment of a less sum might well be deemed to endanger the attainment of the desideratum of proper administration of decedent's affairs, wherefore the maintenance of the specified remuneration involves a very real question of public policy in the usual case. These considerations are wholly absent in the situation of the undertaker. It is, to be sure, in the public interest that the remains of the dead should be decently interred and this is regulated by appropriate statutes. Further than this, however, the public interest does not go; and it is wholly immaterial to the welfare of the community whether the body is placed in a metal casket in a million dollar mausoleum or is sunk in the oblivion of Potter's field. The nature and quality of the funeral and accompanying ceremonies, if any, are, therefore, matters in which the decedent and his surviving relatives, those entitled to share in the property left by him and those performing the services connected with the funeral, are alone interested. So long as the rights of inheritance secured by statute and of creditors of the deceased are not impaired, it would appear competent for the deceased to make any provision respecting his funeral and the disposal of his remains which he sees fit.

In the case at bar the question for determination at the outset is whether the decedent has made such a provision. The language of the testamentary direction quoted appears clear in this respect; he gives the proceeds of the specified security to his " friend Joseph E. Brennan," who is in the undertaking business, " *for the purpose of my burial.*" The gift is obviously not intended as a pure donation to the person named, but is subject to the limitation that the avails thereof shall be utilized for the designated purpose. At this point a further question respecting the interpretation of the testamentary intent arises as to whether such gift, the manner of utilization of

which is so definitely defined, was designed as a direct payment to the named individual or was intended to constitute a trust fund in his hands for the stated purpose. In view of the fact that the recipient was an undertaker and also the " friend " of the decedent, the former conclusion is inevitable. It is the usual practice of mankind to favor their friends in the bestowal of business over which they have control. Furthermore, it is unthinkable that a man who had an intimate personal office for performance which was within the specialized scope of occupation of a friend would anticipate that such friend to whom he had intrusted its performance, would delegate that duty to a competitor. Obviously, therefore, the intention of the testator in the phraseology adopted in the " second " item of his will was that his " friend Joseph E. Brennan " should perform the duties connected with his funeral obsequies and that he should receive therefor the proceeds of the specified bond and mortgage. With full knowledge of this testamentary provision, Brennan performed the service required. The record is barren of any showing of agreement for payment or request for the performance of service other than that contained in the will and implied from its exhibition. Is it possible for Brennan so to act, and then to repudiate the consideration for the service specified by the testator and obtain payment on a *quantum meruit* basis? That is the gist of the question presented. If such conduct on his part is to be prevented it must be by reason of the application of principles of contract or of estoppel.

It does not appear from the facts that any express agreement was made by Brennan that he would look only to the specified security for remuneration for his services in the burial of the testator. This is, however, by no means an insuperable obstacle to a finding of the existence of a binding contract in this regard.

As is pointed out by that world-renowned authority on the subject of contracts, Professor Williston of Harvard: " A vital distinction in contracts exists between (1) those where each party promises some performance and, (2) those where only one party promises performance, the consideration from the promisee being actually given. The former are called bilateral, the latter unilateral. The recognition of unilateral contracts by the law antedated the recognition of bilateral contracts by about a century. * * *

" An offer of reward, an offer of a price for goods, or for services, becomes a contract when what is requested is given or done, though no obligation to give or do anything ever exists." (Williston Cont. § 13.)

That this principle has long been recognized in the decisions of this State is obvious from a perusal of the precedents. In

*First Religious Society in Whitestone* v. *Stone* (7 Johns. 112) it appeared that defendant had signed a document in which he agreed to pay to the trustees of the plaintiff church the sum of five dollars per annum for the purpose of paying a salary for the support of the minister of the society, so long as the latter should administer the gospel of the society and defendant should live within four miles of the place of meeting. The agreement was not signed either by the trustees of the church or the minister.

In permitting recovery, the court said (at p. 115): " The contract was valid in law. * * * The consideration was the preaching of the. gospel by the Reverend Mr. Snowden; and so long as he continued to administer the gospel, and the defendant to reside within the specific distance, so long was the defendant bound by his contract. It could not be dissolved but by mutual consent, nor cease to be obligatory, until the minister ceased to render the service." In *White* v. *Baxter* (71 N. Y. 254) the court says (at p. 259): " The agreement was not void for want of mutuality. It is true that it does not appear that the plaintiff, simultaneously with the defendant's promise, agreed that he would not deposit the margin, or appear before the arbitration committee. But he performed what was demanded of him as the condition of defendant's promise, and that was sufficient. When one, acting on the faith of a promise, performs the condition upon which the promise was made, the promise attaches to the consideration so performed, and renders the promisor liable. After the promisor has had the benefit of the consideration for which he bargained, it is no defence to say that the promisee was not bound by the contract to do the act."

In *Miller* v. *Mc Kenzie* (95 N.Y. 575) the court quotes and approves the language of Chief Justice GRAY in *Cottage Street Church* v. *Kendall* (121 Mass. 529) as follows: " Where one promises to pay another a certain sum of money for doing a particular thing, which is to be done before the money is paid, and the promisee does the thing upon the faith of the promise, the promise, which was before a mere revocable offer, thereby becomes a complete contract upon a consideration moving from the promisee to the promisor."

The final quotation to be noted is taken from *Knudtsen* v. *Remmel* (141 App. Div. 445), in which the court says (at p. 448): " Although the so-called proposal was signed only by Alton, it none the less constituted a contract between the parties.. Remmel and Rose signified their acceptance of it by proceeding to do what it required of them."

Among the many other like determinations in this State it will suffice to note *Beardsley* v. *Davis* (52 Barb. 159, 162); *L'Amoreux*

v. *Gould* (7 N. Y. 349, 350); *Sands* v. *Crooke* (46 id. 564, 570); *Willetts* v. *Sun Mutual Ins. Co.* (45 id. 45, 47); *Mendell* v. *Will-young* (42 Misc. 210, 212); *Post* v. *Frank & Co.* (75 id. 130, 131). (See, also, *Houghwout* v. *Boisaubin,* 18 N. J. Eq. 315, 318.)

The elements of any decision as to whether a contract has actually been consummated in a given case cannot be better stated than in the words of Professor Corbin of Yale University Law School (26 Yale L. J. 169, 170): " In determining whether or not a contract exists in any given case, one of our problems is historical in character. What were the facts? What were the acts of the parties and the circumstances that surrounded them? When these have been ascertained, the next step is analytical. Immaterial facts must be eliminated and the rest must be classified as either evidential or operative. The operative facts are those that cause the existence of those legal relations called a contract. * * *

" What acts are those which will cause society to come forward with its strong arm? They may well be described as operative or causative, for they are necessary antecedents to the creation of those legal relations and societal guaranty of compulsion called contract. The analysis of these acts into offer and acceptance, customarily made by writers on contract law is a convenient one.

" An offer is an act on the part of one person whereby he gives to another the legal power of creating the obligation called contract. An acceptance is the exercise of the power conferred by the offer, by the performance of some act or acts.

" If the acts of A and B are such as to create a right or rights *in personam,* actual or potential, in favor of A and against B, but no such right in favor of B against A, the contract is unilateral." (26 Yale L. J. 173.)

Likewise, a unilateral contract is established if: " A by promissory words gives to B the power of creating in himself a right *in personam* against A by doing an act or acts which A desires to be done." (26 Yale L. J. 176.)

Disregarding for the moment the fact in the case at bar that the potential offerer is dead, it will be advantage to consider whether the remaining facts would have been sufficient to constitute a unilateral contract between the offerer and the undertaker. Suppose the decedent in his lifetime had written to his friend John Brennan: " I will give you, for the burial of ' X,' the proceeds of " the described bond and mortgage. If Brennan, the undertaker, had thereupon proceeded with the funeral of " X," it is doubtful, under the authorities cited, whether any one would have the temerity to assert that a valid contract had not been consummated. Certainly, in such a case, if Brennan had sued the offerer for the

proceeds of the particular security after performance of the requested act, any defense by the latter to the effect that he was not obligated, would meet with short shrift for the reason that by Brennan's performance of the act, a valid and enforcible contract had been consummated. Conversely, and for like reason, if the undertaker had performed the requested service on the faith of the offer, he would not be permitted to recover anything from the offerer other than the consideration which had been promised to him. Although no express authority to this effect has been found, the result is so entirely obvious on primary principles of contract that it is doubtful whether any sane person would dream of litigating the question.

Suppose " A " were approached by " B," who begged food and lodging and were to say to him, " No, I won't give it to you, but I will give you a chance to earn it. If you will stack the wood in my back yard I will give you this relief ticket." If thereupon " B " were to do the act, the latter would not be heard to assert a claim that because he was an architect and had piled the wood into a replica of the Empire State building he was entitled in addition to the relief ticket to a payment of fifty dollars. In both cases the promisee is as much bound by the terms of the contract as if it had been in bilateral form.

The sole additional element in the problem at bar arises by reason of the death of the offerer and the fact that the offer is contained in his will. By the terms of the offer the testator tendered to the person with whom he desired to contract a right *in rem* against a particular portion of his estate in place of the right *in personam* usually incident to such a proposal by a living person.

Barring the presence of rights of creditors and those, like a widow, possessing statutory rights in his estate, none of which questions are involved in the present controversy, the decedent had a fundamental right under existing laws to gratuitously give any portion of his property by will to any person he desired. (*Ennis* v. *Chichester*, 187 App. Div. 53; affd., 227 N. Y. 663; *Ide* v. *Brown*, 178 id. 26, 43, 44; *Dobie* v. *Armstrong*, 160 id. 584, 593; *Lavin* v. *Thomas*, 123 App. Div. 113, 117; *Matter of Tracy*, 11 N. Y. St. Repr. 103, 105; *Matter of Shumway*, 138 Misc. 429, 433.) Since the greater inevitably includes the lesser, it was, *a fortiori*, within his power to make a disposition of his property which would result in a pecuniary advantage to his estate by relieving it of the primary statutory obligation for payment of his funeral expenses. In this aspect, the question closely resembles a gift in lieu of dower or in payment of a debt, which has uniformly received preferential treatment. (*Matter of Smallman*, 138 Misc. 889, 906, 907, and cases cited; *Matter of Rothman*, 140 id. 597, 598.)

There is, therefore, here a complete demonstration of an offer by the decedent to the undertaker that the latter should receive the specified security in return for the performance of the acts necessary for his proper burial, the ability of the offerer to make such a provision, the communication of the proposal to the undertaker by the exhibition of the will to him, and his performance of the acts desired. Nothing remains to complete the requisites to a valid and binding unilateral contract. The doctrine frequently advanced that an offer dies with the maker is no deterrent, since it is primary that in respect to contracts as to wills, the intention of the parties is the determining factor. (*Putnam* v. *Stewart*, 97 N. Y. 411, 421.) Furthermore, if technical rules be resorted to, the principle is applicable that the will speaks only from the moment of death (*Matter of Shevlin*, 143 Misc. 213, 217; *Matter of Duffy*, Id. 421, 422; *Matter of Quick*, 147 id. 28, 35; *Matter of Holmes*, Id. 394, 397), wherefore the offer to the undertaker could not have been canceled by the previously occurring event. In any case, on the merits, it is primary that an offer supported by a consideration will survive death. To say that under demonstrated conditions the present offer would lapse, whereas if the promisee had given a plugged dime for it, it would not, would resemble the proverbial straining at a gnat and swallowing a camel.

For the reasons stated, the court is of the opinion that the facts presented demonstrate the consummation of a valid unilateral contract by reason of which the applicant can be permitted no compensation other than that specified in the will.

The same result seems attainable by an application of the principles of estoppel since the executor's exhibition of the testamentary provision to the undertaker, the latter's failure to dissent therefrom and his tacit engagement as a result thereof would seem to furnish all the necessary elements. (*Matter of Tuozzolo*, 145 Misc. 485, 490, 491, and cases cited.)

Quite aside from the considerations hereinbefore considered, it is apparent that the allegations of the petition, standing alone, are insufficient to warrant the relief sought. The relief permitted by section 216 of the Surrogate's Court Act is expressly conditioned on a demonstration " that the executor * * * has received moneys belonging to the estate which are applicable to the payment of the claims for funeral expenses, and that the executor * * * admits the validity of the claim * * * and the reasonableness of the amount thereof." None of these prerequisite conditions have met with compliance. The " admission " of the " attorney for the executor " alleged is worthless on the first. It is not within the scope of the employment of an attorney to make admissions

except possibly in a pending proceeding (*Lewis* v. *Duane*, 141 N. Y. 302, 313, 314; *Lytle* v. *Crawford*, 69 App. Div. 273, 279; *Witt* v. *Carlton Dress Goods Co.*, 156 N. Y. Supp. 693, 694, not officially reported), and since those alleged are set forth in the affidavit on the strength of which this proceeding was instituted, they obviously antedated it, if made at all. The executor not only does not admit the validity of the claim but expressly denies it. Finally, not only does the executor fail to admit the reasonableness of the claim, but the only justiciable facts alleged in the affidavit indicate that, amounting as it *prima facie* does to about twenty per cent of the gross estate of $5,500, it is grossly unreasonable and would not be properly allowable by the court in the amount claimed even were the executor complacent in this regard.

It follows, from every conceivable aspect, that the application must be dismissed.

Proceed accordingly.