BERTHA E. LOKER, Appellant, *v.* MAURICE C. EDMANS, Respondent, Impleaded with THE TROY SAVINGS BANK, Defendant.

Third Department, January 20, 1923.

**Partition — joint owner of personal property may maintain suit in equity for partition under peculiar circumstances — wife who has received divorce may maintain action against husband to partition joint bank account.**

A court of equity has the right under peculiar circumstances to entertain a suit for the partition of personal property, jointly owned, at the instance of one of the joint owners and without the consent of the other.

A wife who has received a decree of divorce from her husband may maintain an action in equity to partition a joint bank account created before the divorce was granted, since the status of the parties has been so changed by the dissolution of the marriage that they cannot mutually enjoy the joint benefits of ownership which were contemplated and enjoyed as husband and wife, and since the former incentive on the part of the wife to permit the husband to enjoy the rights of survivorship has been cut off.

APPEAL by the plaintiff, Bertha E. Loker, from an order of the Supreme Court, made at the Albany Special Term and entered in the office of the clerk of the county of Rensselaer on the 5th day of August, 1922, granting the motion of the defendant Maurice C. Edmans for a dismissal of the complaint on the ground that it does not state facts sufficient to constitute a cause of action.

*James Farrell,* for the appellant.

*Martin L. Murray* [*John T. Norton* of counsel], for the respondent.

HINMAN, J.:

The complaint alleges that in 1909 a deposit of money was made in the Troy Savings Bank, one of the defendants, in the name of the plaintiff (under the name of Bertha Edmans) and of the defendant Maurice C. Edmans, which deposit was subject to the order of either said plaintiff or of said defendant Maurice C. Edmans, and was payable to either or the survivor of them, the amount of said deposit then being the sum of $151.22; that thereafter and at various dates prior to October 3, 1917, the plaintiff and said defendant Maurice C. Edmans made further deposits in said bank which were added to said account; that from time to time plaintiff and defendant Maurice C. Edmans withdrew portions of said account from said bank; that during said period and thereafter until April 3, 1922, the said defendant bank credited interest upon said account in various sums; and that the amount

of said deposit presently standing to the credit of said plaintiff and said defendant Maurice C. Edmans in said bank is the sum of $998.95. It was further alleged that during the period between 1909 and 1917 the plaintiff and defendant Edmans, who had been married in 1905, lived together as husband and wife; that plaintiff not only managed the household affairs for herself and defendant Edmans but also was employed and earned money by working outside of the home; and that a large part of said deposits consisted of the earnings of this plaintiff and of her savings as manager of the household affairs. It was further alleged that in 1909 at the date of the creation of this account this plaintiff and the defendant Edmans became " and have continued to be and now are the owners of said deposit or account in said Troy Savings Bank as joint tenants and that the interest of the plaintiff in said deposit and account is an undivided one-half part thereof and the interest of the said defendant Maurice C. Edmans therein is an undivided one-half part therein and that the said defendant Troy Savings Bank has no interest in said account." It is further alleged that " a judgment was duly made and entered on or about January 27, 1922, dissolving said marriage and permitting the plaintiff to resume the use of her maiden name, Bertha E. Loker." And the complaint alleges finally " that the defendant, Maurice C. Edmans, has the possession of the bank book issued by the defendant, Troy Savings Bank, and plaintiff has demanded payment of said deposit from said bank but said bank has refused and still refuses to pay the amount of said account to plaintiff." The plaintiff demands judgment against the bank for the amount of the deposit with accrued interest and against the defendant Edmans " determining that plaintiff is entitled to an undivided one-half part of said deposit and interest, and for such other and further judgment or relief as may be just and proper."

We must start with the proposition that the interests of the appellant and respondent Edmans were not several (*Matter of Buchanan*, 184 App. Div. 237; *Mulcahey* v. *Emigrant Industrial Savings Bank*, 89 N. Y. 435) but were joint, since that is the presumption under the statute (Banking Law of 1892, § 114, as amd. by Laws of 1907, chap. 247; Banking Law of 1909, § 144; Banking Law of 1914, § 249) and since the complaint expressly alleges that they are joint owners. The gist of the action is for partition in equity as between these joint owners upon the ground that the conditions between the parties have materially changed in view of the severance of the marital relation whereby the parties are precluded from the joint use by withdrawal of funds during their joint lives and the plaintiff, appellant, has no longer the

former incentive to permit the defendant to enjoy the rights of survivorship in the event of her earlier demise. The court below has held that the remedy of partition in equity is available at the instance of such a joint owner, citing *Eisner* v. *Curiel* (20 Misc. Rep. 245); Fowler Pers. Prop. Law [2d ed.] 50; *Western Grocer Co.* v. *Alleman* (81 Kans. 543; 27 L. R. A. [N. S.] 620); Knapp Partition, 488; *Tripp* v. *Riley* (15 Barb. 333); *Tinney* v. *Stebbins* (28 id. 290), and *Beardsley* v. *Kansas Natural Gas Co.* (78 Kans. 571; 96 Pac. Rep. 859). The respondent Edmans criticises the authorities relied upon by the appellant as applicable only to tenants in common where interests are several and relies upon *Matter of Tilley* (166 App. Div. 240) and *O'Connor* v. *Dunnigan* (158 id. 334), claiming that the effect of those authorities is that neither joint owner of such a bank account can destroy the joint title or the right of suvivorship without the consent of the other, and said respondent further contends that there is no allegation in the complaint that he was asked to consent or that he refused to consent.

Taking up the first contention of the respondent, we are forced to the conclusion that he is in error under what seems to be the settled law of this State. The fundamental error of the respondent lies in the fact that he has not properly interpreted the effect of a joint tenancy in personal property. It is not the law that the right of survivorship cannot be cut off without the consent of both of the joint owners. Such joint ownership in personal property may be severed and the doctrine of survivorship applies only if the jointure is not severed during the joint lives. This has been clearly settled in *Matter of McKelway* (221 N. Y. 15). In that case it was held that a joint ownership of personal property is analogous to a similar estate in lands and that the husband and wife do not take personal property as tenants by the entirety. The court said: " There is a joint ownership of personal property analogous to a joint estate in lands, * * * but husband and wife do not take personal property as tenants by the entirety. * * * Joint tenants, by reason of the combination of entirety of interest with the power of transferring in equal shares, are said to be seized *per my et per tout,* or by the half *and* the whole, but tenants by the entirety are seized *per tout et non per my,* and the conveyance by either husband or wife will have no effect against the other if survivor. * * * Upon the vesting of an estate by the entirety, both tenants become seized of the whole estate and upon the death of one the survivor acquires no new or additional interest by survivorship. * * * But joint owner-

ship in personal property may be severed by the act of one in disposing of his interest. If the interest of one joint owner passes to a third party he and the other joint tenant become tenants in common. The doctrine of survivorship applies only if the jointure is not severed. (Williams on Personal Property, pp. 302–306.) The undivided half of this joint property which Mr. McKelway might have effectually disposed of at any time during his life never passed into the absolute ownership of his wife until her husband's death." This right to destroy a joint tenancy in personal property by severance during the joint lives has existed from the early common law. " The right of survivorship attaches to a joint tenancy of personalty, including choses in possession and in action, as well as of realty, until severance." (Halsbury's Laws of England, vol. 22, p. 403, citing Coke upon Littleton, 182 A.) " The continuance of the joint tenancy depends on the maintenance of the unities of title, interest and possession; and the destruction of any of these unities leads to a severance of the tenancy, and to the creation either of a tenancy in common or of several tenancies. * * * The unity of possession is destroyed, and the joint tenancy severed, upon a partition of the land between the joint tenants; and this may be either by agreement or compulsorily." (Halsbury's Laws of England, vol. 24, pp. 204, 206.) There may be a severance of joint ownership in personal property just as there may be in the case of a joint tenancy of real estate and this same principle is generally applicable in equity with respect to choses in action to which more persons than one are jointly entitled. (Williams Pers. Prop. [17th ed.] 458.) The text writers on American law likewise recognize with apparent uniformity this doctrine of the severance of a joint ownership and of the right to partition in equity personal property held in common or jointly. Fowler on Personal Property (2d ed. p. 50) states: " Personal property held in common or jointly may be partitioned and thus become property held in severalty. Partition may be by agreement of the owners or by a decree of court at the instance of one or more of the co-owners." In Smith on Personal Property (2d ed. p. 31) it is said: " Joint ownership in personal property may be severed by agreement of the parties, by act of one in disposing of his interest, by a decree of a court of equity, and as some authorities hold, by levy and sale of the interest of one under an execution."

Schouler on Personal Property (5th ed. § 160) states: " Joint ownership in chattels, like a joint tenancy in lands, is liable to severance; that is to say, one of its constitutent unities may be destroyed, so as to turn the estate or interest into an ownership

in common. Thus, one of the persons interested may dispose of his interest in such manner as to sever it from the joint fund; losing, likewise, his own right of survivorship. This is severance by act of one of the parties."

In Pomeroy's Equity Jurisprudence (Vol. 4 [3d ed.], § 1391) it is said: " The rules and proceedings which obtained at common law and by statute on the subject of partition related exclusively to real estate. At common law the co-owner of a chattel could maintain an action respecting the common property against his co-tenant only where a loss, destruction, or sale of the property was provable against the defendant. However expedient the partition of chattels might appear, or however desirable it might be to the co-tenants, the common law furnished no instrumentality by which the partition could be judicially effected. There was not merely an inadequacy of legal remedy, there was an utter absence of it. The situation clearly demanded the intervention of equity. And although the inception of the equitable jurisdiction for the partition of chattels is not traceable with certainty, the jurisdiction itself is unquestioned; and where a literal partition is not practicable, the court will order a sale." The authority of a court of equity to partition personal property held jointly or in common has long been recognized in this State. In the case of *Tinney* v. *Stebbins* (28 Barb. 290, 292), the court said: " Nor can any *action at law* be maintained by one joint tenant or tenant in common, for the partition of personal property. But the law is not subject to the reproach that there is no remedy for the joint tenant or tenant in common deprived of his just rights, to the possession, use or fruits of the common property. A court of equity is competent to give relief in such cases, by decreeing a partition of the property, or a sale thereof where partition is impracticable, and a division of the proceeds. The powers of a court of equity were conferred and exist, to meet just such cases, where no adequate remedy exists at common law."

There seems to be a uniform holding that the joint tenancy in personal property is analogous to a joint estate in lands except that as between husband and wife such joint estate in personal property does not make them tenants by the entirety. (*Matter of McKelway, supra.*) The right to compel partition has always been recognized as an incident to the ownership in joint tenancy of lands and we see no reason why it should not be an incident to the joint ownership of personal property. It cannot be urged that the right to compel partition of lands owned in joint tenancy rests upon statutory authority. In *Baldwin* v. *Baldwin* (74 Hun, 415, 418) the court said: " The inadequacy and inefficiency of the

statutory remedies led Courts of Chancery to assume jurisdiction in partition." It has also been held with reference to compelling partition of lands jointly owned that the right of one joint tenant to convey his interest is unhampered and that " by reason of this fact partition is permissible by action." (*Messing* v. *Messing*, 64 App. Div. 125, 126.) Our conclusion is that a court of equity has the right in a proper case to entertain a suit in equity for the partitioning of personal property, jointly owned, at the instance of one of the joint owners and without the consent of the other.

We find no authority holding that a joint tenant has a right to compel partition of personal property, jointly owned, at will. We think there should be peculiar circumstances which justify equitable action and that courts of equity should be reluctant to assume the task of adjusting controversies between such joint owners of personal property. This principle seems to find support in authority. Schoulder on Personal Property (5th ed. § 167) states: " If the doctrines of a joint and common ownership in things personal appear rather vague, meagre, and unsatis-factory, this is doubtless because they are so seldom applied in the courts. To adjust controversies between those who are so unfortunate as to have once become chattel communists, and to determine how far each proprietor shall enjoy or dispose of what ought to be either sold and divided or else managed upon some special agreement, is a task which the judiciary are reluctant to assume." We are satisfied that the complaint before us states facts showing sufficient reason for equitable interference. The plaintiff in this case has stated facts tending to show reason for equitable interference in that the status of the parties has been so changed by the dissolution of the marriage that they cannot mutually enjoy the joint benefits which were contemplated and enjoyed as husband and wife and in that the former incentive to permit the other to enjoy the rights of survivorship has been cut off.

The order should be reversed on the law, with ten dollars costs and disbursements, and the motion denied, with ten dollars costs, with leave to the respondent, within twenty days after the entry and service of the order of this court, to answer or otherwise plead.

H. T. KELLOGG, Acting P. J., KILEY, VAN KIRK and HASBROUCK, JJ., concur.

Ordered reversed on the law, with ten dollars costs and disburse-ments, and motion denied, with ten dollars costs, with leave to the respondent, within twenty days after entry and service of the order of this court, to answer or otherwise plead.