In the Matter of the Estate of JAMES C. BROGAN, Deceased.

Surrogate's Court, Kings County, November 17, 1937.

*Walter J. Klein* [*Meyer Lindner* of counsel], for the petitioner, Walter F. Brogan, as administrator of James C. Brogan, deceased.

*Peyser & Harris* [*Horner I. Harris* of counsel], for Florence Posage, respondent.

*Cadwalader, Wickersham & Taft*, for the Bowery Savings Bank, respondent.

WINGATE, S. James C. Brogan, a retired employee of the New York fire department, died at nine-fifty A. M. on February 1, 1937, aged about eighty-five years. He was survived by five children, two daughters, Florence Posage and Helen Martin, and three sons, Walter, Francis and James. He was taken to St. Mary's Hospital in an ambulance at the direction of a physician who had just been called in at about six P. M. on January twentieth suffering from

arteriosclerotic heart disease with decomposition and diabetes. At the time of his admission he was very sick and became progressively worse, although there appeared to be some improvement in his condition for the first two days. He had great difficulty in breathing, to such an extent that his wheezing and gasping for breath would be obvious to any person entering the room. As a result of this condition, oxygen was prescribed and was administered through the nose by means of catheters which were taped on.

At the time of his admission to the hospital his principal assets consisted of an account in the Kings County Savings Bank, standing in his own name and showing a balance of $5,000, and another account in the Bowery Savings Bank, with a balance of $3,000. The latter was a joint account in statutory survivorship form with his wife, Mary Brogan, who had died several years before.

On January twenty-second the decedent requested that his daughter, Florence Posage, be sent for. She came and received from him two papers, the first of which " authorized " the Kings County Savings Bank to change his account with it to one in statutory survivorship form in the names of the decedent and this daughter. The second was a like authorization to the same effect to the Bowery Savings Bank. Both of these papers purport to have been signed by the decedent and to have been acknowledged on that date before a notary public attached to the hospital whose action in this regard was authorized by the physician in charge.

Some question was raised upon the trial as to whether or not the decedent, at the time of the execution and delivery of these documents, possessed sufficient mental capacity for the valid performance of such an act. In view of the affirmative testimony of the staff physician, the supervising floor nurse, the resident interne and the notary the court is satisfied that he did and ruled to that effect at the close of the trial but is further satisfied from the testimony of the two physicians and the night nurse that it is extremely doubtful whether he possessed such capacity on any subsequent date and that it is an assured fact that he lacked it on January twenty-eighth when another transaction, attempted to be consummated, occurred.

On January twenty-sixth Mrs. Posage presented the appropriate authorization to the Kings County Savings Bank, which changed its account from the sole name of the decedent into one in joint statutory survivorship form in his name and that of Florence Posage. She simultaneously withdrew $1,000 from the account. On January twenty-seventh, which was five days before her father's

death, she effected a transfer of the entire remaining balance of $4,000 to a new account in her individual name.

At the start, at least, she was less successful in securing control of the avails of the Bowery Savings Bank account. This institution had never been informed of the death of Mary Brogan, and under the circumstances refused to transfer the account into another form which wholly eliminated her. Mrs. Posage accordingly abandoned this attempt and on January twenty-eighth secured from the decedent a purported authorization for the transfer of the account into her individual name. This was honored by the bank, and on the same day a new account was opened by it in her name with the avails of the former account, which totaled $3,000. As heretofore stated, the demonstration of the record is conclusive that at the time this latter transaction occurred, the decedent lacked the mental capacity requisite to the valid performance of such an act. Nevertheless, Mrs. Posage simultaneously with its transfer to her individual name, withdrew $1,000 from the account and withdrew an additional sum of $500 on March second subsequent to her father's death.

The next demonstration of her dealings with the decedent's property relates to transactions which took place on the day of his death. The decedent was in receipt of a monthly pension of $263 from the fire department. The check which was made payable to the decedent for the January installment was mailed on Saturday, January thirtieth, to the decedent at his residence on Nostrand avenue, Brooklyn. In ordinary course, it could not have arrived until the first delivery of mail on Monday morning, February first. That delivery was made between nine and nine-fifteen A. M. The decedent was then in a moribund condition and actually expired at nine-fifty A. M. Mrs. Posage applied to Battalion Chief Farrell at some time after twelve-thirty P. M. on that day, and without informing him of her father's death secured his aid in having the check cashed on the faith of her indorsement in the decedent's name and on the representation that there was need for the money.

The right of the administrator to recover the proceeds of this check was conceded on the trial after the foregoing pertinent facts had been established, with the result that the controversy between the estate and the daughter chiefly concerns the avails of the two bank accounts aggregating $8,000.

On behalf of the respondent, an attempt was made to demonstrate facts sufficient to establish a gift of these accounts. This effort was based solely on the testimony of one Ruth Leitner, a free-lance radio script writer, said to be in Chicago at the time

of the trial, whose deposition was taken on May 6, 1937, her expenses to New York for the purpose having been paid by the respondent. According to her testimony she was the daughter of a woman who kept a store in the neighborhood of decedent's apartment, and had known the respondent for about a year, during which time she had seen her about fourteen or fifteen times. According to her deposition, the respondent selected her to accompany her to the hospital and the bank on January twenty-first and twenty-second at the times when the first transactions in respect to the savings accounts are asserted to have occurred. The record may be searched in vain for any corroborating testimony as to her participation in these alleged events. Various portions of her testimony are mutually contradictory but the most damning portion of her recital (no doubt due to the fact that her testimony was given prior to the conclusive demonstration by the doctors and nurses of the extremely precarious state of the decedent when the transactions are alleged to have occurred as heretofore noted) was her reiterated insistance that in the ten to fifteen minutes conversation which she asserted she and the respondent had with him he did not appear to be sick and " looked all right;" " he appeared to be perfectly normal in every respect other than the fact that he was there;" that there was no trouble with his voice or breathing; that he talked in an " average conversational tone;" " as plainly as I am speaking to you right now and as clear." When these statements are compared with those of the doctors and nurses, reinforced by the hospital charts to which they referred to substantiate their recollections, the conclusion is irresistible either that the witness never saw the decedent at all and that her testimony was a fabrication or that it was so colored as to render it and the witness wholly untrustworthy. The court accordingly applies to her recital the principle *falsus in uno, falsus in omnibus* (*Moett* v. *People*, 85 N. Y. 373, 377; *Deering* v. *Metcalf*, 74 id. 501, 506, 507; *Matter of Davis*, 142 Misc. 681, 686; *Matter of Timko*, 150 id. 701, 707; *Matter of Sidman*, 153 id. 735, 737), and rejects it in its entirety. It follows that there is nothing in the record to indicate the consummation of a gift other than the transactions which have been recited with the inferences naturally deducible therefrom and the legal implications thereof.

Turning now to the opposing contention that the sole purpose of the decedent was to accord the respondent a limited authority over the bank accounts for the convenient payment of the expenses attendant upon his illness, the only demonstrations in the record tending to support such a position are found in the statements of

the clerk from the Kings County Savings Bank, the notary and the interne that the respondent had said that the purpose of the change in the account and the execution of the papers was to make money available for the payment of expenses. In the opinion of the court these are not properly construable as admissions on her part that this was the sole purpose of the execution of the papers, when they are viewed in the light of the acts actually performed by the decedent. The respondent had resided with the decedent since the death of his wife and had kept house and cared for him. There is, therefore, nothing necessarily strange or suspicious in the fact that he should wish to place his bank accounts in a form similar to that in which at least one of them had been carried during his wife's life and with which he was obviously familiar by reason of this previous experience. There is nothing to indicate that he was not fully appreciative of the interest in the accounts which would accrue to his daughter by reason of their alteration to joint accounts with her, and a willingness to confer such benefit is deducible from the attempted will which was introduced into evidence which, while worthless for devolutionery purposes by reason of failure in execution, nevertheless indicates a purpose to benefit the daughter in preference to others.

In view of the fact, determined at the close of the trial, that at the time the authorizations were executed on January twenty-second the decedent was capable of comprehending the nature and quality of his acts, it must follow that an inference should be indulged that he intended the natural consequences of the acts which he actually performed. (*Ampersand Hotel Co.* v. *Home Insurance Co.*, 131 App. Div. 361, 364; revd., on other grounds, 198 N. Y. 495; *Kantor* v. *Cohn*, 181 App. Div. 400, 404; *Burgess Bros. Co., Inc.,* v. *Stewart*, 112 Misc. 347, 363; affd., 194 App. Div. 913; *Matter of Greenberg*, 141 Misc. 874, 878; *Matter of Gregory*, 150 id. 610, 612.) The question thereupon arises as to the legal effect of the transactions thus demonstrated to have occurred.

Despite the lucid statements of the Court of Appeals in *Moskowitz* v. *Marrow* (251 N. Y. 380) respecting the rights consequent upon the opening of a bank account in statutory survivorship form, and their reiteration in *Marrow* v. *Moskowitz* (255 N. Y. 219) and *Matter of Porianda* (256 id. 423), considerable unjustifiable misapprehension appears to exist concerning the subject. There is nothing unusual or esoteric respecting the effect of the provisions of section 144 of the former Banking Law (Laws of 1909, chap. 10), now contained in section 249 of the present Banking Law (Laws of 1914, chap. 369), nor in the addition made in the latter. No new

legal conception was created thereby. All which was attempted or accomplished was the enunciation of certain rules of evidence which, in certain instances of their operation are somewhat remotely analogous to the effect of the rules of section 347 of the Civil Practice Act, although, of course, limited to litigations respecting the species of joint tenancy pertaining to bank accounts.

These rules of evidence are in the form of presumptions, or inferences, are two in number, and are clearly stated by Judge KELLOGG in *Matter of Porianda* (256 N. Y. 423, 425):

" The first, reversing the common-law rule, requires a holding, in the absence of other proof, that a deposit made in the names of the depositor and another person ' in form to be paid to either or the survivor of them ' becomes ' the property of such persons as joint tenants.' This presumption is not conclusive and may be overcome by proof that the depositor, when making the deposit, had no intention to create a joint tenancy.

" The second presumption, that title passes to the survivor, where applicable, is irrefutable by proof, and, therefore, a rule of substantive law. * * * To be applicable, however, there must have been survivorship; and, even then, its application is limited to the moneys still on deposit in the savings bank, credited to the depositors under the original formula ' payable to either or the survivor.' This presumption does not apply ' in respect of any moneys withdrawn by either during life ' (*Moskowitz* v. *Marrow, supra,* at p. 397); it applies only ' in favor of the survivor in respect of any moneys then left in the account.' (*Marrow* v. *Moskowitz,* 255 N. Y. 219, 221.) "

A complete comprehension of these two rules of evidence presupposes an adequate understanding of the attributes of the common-law tenure of joint tenancy which has latterly fallen into some popular disfavor. (Real Prop. Law, § 66; *Loker* v. *Edmans,* 204 App. Div. 223, 228.) As was noted by this court in its opinion in *Matter of Cotter* (159 Misc. 324), joint tenants possess two rights, namely, *first,* a present undivided ownership of the property in question in proportion to the total number of joint tenants (*Matter of Sutter,* 258 N. Y. 104, 106; *Messing* v. *Messing,* 64 App. Div. 125, 126; *Matter of Perry,* 104 Misc. 115, 117), and, *second,* a *jus accrescendi* (*Williams* v. *Hensman,* 1 Johns. & H. 546, 557) by reason of which the particular joint tenant who chances to survive all his fellows will become the sole and unqualified owner of the entire subject-matter. (*Matter of Weissbach,* 111 Misc. 501, 506.)

The latter right persists unless and until the jointure is severed. (*Matter of McKelway,* 221 N. Y. 15, 19; *Loker* v. *Edmans,* 204 App.

Div. 223, 225.) The modes by which such severance may be accomplished are noted in the *Cotter* case (*Matter of Cotter*, 159 Misc. 324, at p. 327), but are presently immaterial, as no act accomplishing a severance here took place, for the reason that the appropriation by one of the joint tenants of the entire property to his own use cannot produce that effect. (*O'Connor* v. *Dunnigan*, 158 App. Div. 334, 336; affd., 213 N. Y. 676; quoted and followed in *Moskowitz* v. *Marrow*, 251 id. 380, 394; *Matter of Porianda*, 256 id. 423, 426.)

It follows, therefore, that at the time the Kings County Savings Bank account was changed to a joint account, an inference or " presumption " arose that the decedent and Mrs. Posage had become the joint owners of the avails of that account in equal shares and that each possessed in addition to such present right, a *jus accrescendi*, or right of survivorship, as to the undivided share of the other which would entitle him or her to the ownership of the totality of the avails if he or she survived the other. Had the account remainded undisturbed until the death of the decedent the absolute right of Mrs. Posage to the entire account would under the second noted rule enunciated in *Matter of Porianda*, have been conclusively presumed in the absence of a demonstration of active fraud in the original opening of the account.

This, however, did not occur. All of the funds in the account were withdrawn by Mrs. Posage prior to the death. The result of this act, however, was not to destroy the joint tenancy, if one was actually initially created, but merely to prevent the raising of the irrebuttable inference of her complete ownership. In other words, the former of the two Porianda rules applies. A presumption, or inference exists that a joint tenancy with the usual incident of right to survivorship was created by the opening of the account, but this inference is subject to rebuttal by the introduction of evidence to demonstrate " that the depositor, when making the deposit had no intention to create a joint tenancy."

" The withdrawal did not destroy the joint tenancy or the title of the survivor, if a joint tenancy had been created. It did, however, open the door to competent evidence, if any was available, that the tenancy created at the opening of the account was in truth something different from the tenancy defined by the presumption. It had no other force." (*Marrow* v. *Moskowitz*, 255 N. Y. 219, 221, 222.)

No testimony indicating that the decedent did not intend the creation of a joint tenancy was adduced upon trial in this proceeding, wherefore it follows that upon the death of the decedent,

Mrs. Posage, in consequence of the maturing of her survivorship right, became entitled to the total avails of the Kings County Savings Bank account. (*Matter of Leakes*, 163 Misc. 285, 286.)

The position of the petitioner that to effect the valid opening of the joint account, the personal appearance of decedent at the bank was essential, and that the method here adopted, of a written direction by him, was ineffective under the statute, is wholly without merit. (*Matter of Porianda*, 256 N. Y. 423, 424.)

The situation of the respondent in respect to the account in the Bowery Savings Bank is encompassed by greater difficulties. Concededly no transformation of this account into a statutory survivorship joint account ever occurred. It is, however, her contention that the decedent intended that this should be done and that this court should validate the intention of the decedent in this regard, on the theory that an equitable assignment was effected.

Viewing the matter from this standpoint, it is necessary to recall the nature and basis of the doctrine invoked. " An equitable assignment has been defined to be such an assignment as gives the assignee a title which, although not cognizable at law, equity will recognize and protect." (*Holmes* v. *Evans*, 129 N. Y. 140, 144.)

Strictly speaking, an assignment at law contemplates a completed transfer of the entire interest of the assignor in the particular subject-matter. (*Kavanaugh* v. *Cohoes Power & Light Corp.*, 114 Misc. 590, 608.) It follows that, formerly at least, a legal assignment of a part of a right or demand was not permissible at law since a multiplicity of actions in respect to a single matter would not be tolerated. (*Secor* v. *Sturgis*, 16 N. Y. 548, 556; *Perry* v. *Dickerson*, 85 id. 345, 348; *Pakas* v. *Hollingshead*, 184 id. 211, 214.) In equity, however, such a partial transfer would be validated and enforced (*Dickinson* v. *Tysen*, 125 App. Div. 735, 737; *Carvill* v. *Mirror Films, Inc.*, 178 id. 644, 647), provided the circumstances of the case were such as to call for equitable interposition. It follows that an order for payment of a part of a specific fund constitutes merely an equitable and not a legal assignment (*Attorney-General* v. *Continental Life Ins. Co.*, 71 N. Y. 325, 330), and is enforcible only in accordance with the rules formulated in this regard for the purpose of preventing a miscarriage of justice.

These principles, so far as here pertinent, are enunciated with particular clearness in the leading case of *Tallman* v. *Hoey* (89 N. Y. 537, 539): " The circumstance which justifies and induces that equitable construction which treats as an assignment what is not strictly and legally such, is the existence of a valuable con-

sideration for the imperfect transfer. (*Brill* v. *Tuttle*, 81 N. Y. 457.) It proceeds upon a necessity demanded by the justice of the case, and to obviate an injury or wrong which would otherwise occur. Where the holder has parted with nothing, and so loses nothing by the application of ordinary legal rules, no pressure of justice requires the intervention and the help of an equitable doctrine. And so it follows that, conceding the order to have been drawn on a particular fund * * * yet the presence of a valuable consideration upon which the order, or direction to pay, was founded, becomes the essential and necessary element of an equitable assignment."

To like effect see *Alger* v. *Scott* (54 N. Y. 14, 15); *Brill* v. *Tuttle* (81 id. 454, 457); *Matter of Wilbur* v. *Warren* (104 id. 192, 196); *Farmers' Loan & Trust Co.* v. *Winthrop* (207 App. Div. 356, 363; affd., as to this point, 238 N. Y. 477, 487); *Matter of Tuozzolo* (145 Misc. 485, 489).

There is not the remotest intimation in the present case that there was any consideration moving from Mrs. Posage to the decedent in return for the issuance of the order which, if acted upon, would have had the effect of making a present gift to her of an undivided half interest in the account. The instrument was not, in form, an assignment to her of anything whatsoever. It was merely a direction to a third party to do certain acts which, if performed, would have had the effect of making that delivery of the intended gift which the law deems an essential prerequisite to its consummation. (*Leary* v. *Geller*, 224 N. Y. 56, 59; *Matter of Van Alstyne*, 207 id. 298, 308; *Vincent* v. *Rix*, 248 id. 76, 82; *Schwab* v. *Schwab*, 177 App. Div. 246, 248; *Matter of Moran*, 136 Misc. 615, 625; *Matter of Weinberg*, 162 id. 867, 871.) Perhaps such third party was unjustified in its failure to perform the directed act; perhaps its refusal was proper. This question is, however, not before this court for determination. The only issue here present is whether a gift was actually consummated which would have the result of vesting in the respondent any rights in this account either in law or in equity. The answer must be in the negative. That the respondent fully realized this fact seems obvious from her subsequent attempt to obtain control of the account by means of the later authorization for its transfer to her individual name which failed by reason of the fact that the purported donor lacked the mental capacity requisite for the making of a valid gift. (*Matter of Housman*, 224 N. Y. 525, 526; *Matter of Davis*, 128 Misc. 622, 623; affd., 222 App. Div. 846; *Matter of Booth*, 224 id. 363, 365; *Matter of Wanner*, 146 Misc. 722, 725.)

The further contention of the respondent that she possessed an agency from the decedent for the transfer of the account, coupled with an interest, begs the question at issue as to whether the document signed by the decedent actually gave her an interest. In the opinion of the court it did not.

The court has not overlooked the cases cited by the respondent. *Farrell* v. *Emigrant Industrial Savings Bank* (92 App. Div. 529) is not in point. There a joint account was actually consummated. In *McGuire* v. *Murphy* (107 App. Div. 104); *Ridden* v. *Thrall* (125 N. Y. 572) and several of the other cases there were completed gifts of the entire bank accounts perfected by the symbolical delivery of the indicia of ownership or by the execution of drafts for the entirety of the avails of the account.

The foregoing disposes of the main items in controversy. It was demonstrated at the trial that the clothing of the deceased was taken by two of his sons, wherefore recovery in respect thereof must be denied. The same applies to the watch and chain which was taken by Francis. It was admitted that the respondent has possession of an " oil " painting, a diary of the deceased and a pawn ticket and a *prima facie* demonstration as to her accountability for the furniture listed in petitioner's Exhibit 18 was made. No adequate proof as to any other items of personal property was adduced.

By way of summary, therefore, the respondent will be directed to surrender to the administrator the $3,000 representing the Bowery Savings Bank account, the $263 collected on the pension check, the pawn ticket, diary, " oil " painting and furniture enumerated in petitioner's Exhibit 18. Recovery of the wearing apparel and jewelry listed in this exhibit is denied, as is recovery of the avails of the Kings County Savings Bank account. The value of the items of furniture in question has not been established. In its discretion, the court will decline to allow costs to either party.

Enter decree on notice in conformity herewith.