Robert and Ruth ZINK, Appellants,

v.

William G. VANMIDDLESWORTH,
Jr., Respondent,

Robert and Ruth Zink, Appellants,

v.

Frank F. Vanmiddlesworth,
Jr., Respondent.

Nos. 5:02–CV–1101, 5:02–CV–1102.

United States District Court,
N.D. New York.

Sept. 30, 2003.

The Clements Firm, Thomas G. Clements, of counsel, Glens Falls, NY, for Appellants Creditors Robert and Ruth Zink in both cases.

Bentkofsky & Simmonds, LLP, Allan J. Bentkofsky, of counsel, Auburn, NY, for Respondent Debtor William G. Vanmiddlesworth, Jr. in 5:02–CV–1101 and Respondent Debtor Frank F. Vanmiddlesworth, Jr. in 5:02–CV–1102.

Hancock & Estabrook, LLP, Charles J. Sullivan, of counsel, Maureen E. Maney, of counsel, Syracuse, NY, for HSBC Bank USA.

## MEMORANDUM–DECISION AND ORDER

MORDUE, District Judge.

### BACKGROUND

Presently before this Court are appeals by Robert and Ruth Zink from a Memorandum–Decision and Order signed by Hon. Robert E. Littlefield, Jr., United States Bankruptcy Judge, on August 1, 2002, in two bankruptcy cases, *In re William G. Vanmiddlesworth, Jr.* (Bankr. No. 02–12746), and *In re Frank F. Vanmiddlesworth, Jr.,* (Bankr. No. 02–12747). The Vanmiddlesworths, cotenants of a dairy farm, are proceeding under Chapter 12 of the Bankruptcy Code, which provides for reorganization of family farms and permits debtors to operate their farms during the proceedings.

The Zinks moved in both cases for adequate protection and lifting of the stay under 28 U.S.C. §§ 157(a), (b)(1), (b)(2)(G) and 1334(b), relative to the Zinks' purchase-money security interest in 54 head of cattle sold by the Zinks to the Vanmiddlesworths pursuant to a promissory note and security agreement. Prior to the transaction with the Zinks, Frank Vanmiddlesworth had signed a security agreement

covering after-acquired livestock in favor of Marine Midland Bank, the predecessor of HSBC Bank USA ("HSBC"). In the August 1, 2002 order which is now before this Court, Judge Littlefield addressed the interests of both William and Frank Vanmiddlesworth and held that although the Zinks have a purchase-money security interest in the 54 cows, they did not achieve "livestock purchase-money security interest priority" over HSBC, at least not with regard to Frank Vanmiddlesworth's interest. He further held that with respect to both Vanmiddlesworths, the Zinks had not demonstrated their entitlement to an order conditioning the use of the collateral on adequate protection payments or terminating the automatic stay. Accordingly, he denied the motions.

Subsequent to the issuance of Judge Littlefield's August 1, 2002 decision, the Vanmiddlesworths brought an adversary proceeding against the Zinks seeking to avoid their security interest on the ground that it constitutes a preference under 11 U.S.C. § 547(b)(4)(A). The trustee moved to dismiss the Vanmiddlesworths' bankruptcy cases for failure timely to file proposed plans under 11 U.S.C. § 1221. The trustee's dismissal motion was settled, giving the Vanmiddlesworths additional time to file an appeal after the determination of the appeal herein and the adversary proceeding.

 District Court has jurisdiction over the appeals pursuant to 28 U.S.C. § 158(a)(1). In this circuit, an order denying a motion to lift a stay is final and appealable, *see In re Megan–Racine Assocs., Inc.*, 102 F.3d 671, 675 (2d Cir.1996), as is an order denying a motion for adequate protection. *See, e.g., In re O'Connor*, 808 F.2d 1393 (10th Cir.1987).

 Upon review, a district court may set aside findings of fact made in a bankruptcy case only if they are "clearly erroneous." Fed. R. Bankr.Pro. 8013. Bankruptcy court's conclusions of law are subject to *de novo* review. *See In re McLean Indus., Inc.*, 30 F.3d 385, 387 (2d Cir.1994). And matters vested in bankruptcy court's discretion—such as whether to grant adequate protection or to lift the automatic stay—are reviewed for abuse of discretion. *See Capital Communications Fed. Credit Union v. Boodrow*, 126 F.3d 43, 47 (2d Cir.1997); *In re Sonnax Indus., Inc.*, 907 F.2d 1280, 1286 (2d Cir.1990).

### THE ORDER ON APPEAL

In addressing the motions for adequate protection or termination of the automatic stay, Judge Littlefield first found that the Zinks have a purchase-money security interest in the 54 cows. Applying N.Y.U.C.C. § 9–324(d) and (e), he held, however, that the Zinks did not achieve "livestock purchase-money security interest priority" over HSBC with regard to the interest of Frank Vanmiddlesworth. In reaching these conclusions, Judge Littlefield made the following factual findings, based largely on the stipulation of facts filed by the parties and the bankruptcy petitions and schedules filed by the Vanmiddlesworths:

On or about April 7, 1998, Debtor Frank F. Vanmiddlesworth, Jr. signed a security agreement in favor of Marine Midland Bank ("MMB"). The security agreement states that it includes dairy cattle "now owned or hereafter owned or acquired by Debtor." That same day he also signed a second security agreement in favor of MMB, assigning to it all his accounts, general intangibles and chattel paper. On or about April 13, 1998, MMB filed a UCC–1 financing statement in the St. Lawrence County Clerk's Office. The financing statement states that it covers all cattle, equipment, supplies, accounts, general intan-

gibles and chattel paper "now owned or hereinafter acquired, wherever located."

On or about May 7, 2001, Debtor Frank F. Vanmiddlesworth, Jr. and Debtor William G. Vanmiddlesworth, Jr., his brother, signed a document entitled "Optional Advance Time or Demand Grid Note" ("grid note 1") in favor of HSBC Bank USA ("HSBC")[1] in the amount of $10,000. They signed another grid note on or about August 7, 2001 ("grid note 2"). Grid note 2 was in the amount of $431,000.

On or about November 26, 2001, the Debtors executed a contract to purchase 54 cows from the Zinks. On that same day, they also signed a promissory, note and a security agreement in favor of the Zinks. The sales contract places a unit value price of $1,700 on 52 of the cows, $800 for cow with identification # 492 and $600 for cow with identification # 471. The security agreement granted the Zinks a security interest in "54 head of cattle (livestock) including any additions, substitutions or replacements."

The Debtors also signed a financing statement, using the form adopted by the Secretary of State prior to the revision of Article, 9 of the New York Uniform Commercial Code ("N.Y.U.C.C."). They did not use the new form created in connection with Article 9's revisions which became effective in New York on July 1, 2001.

The language of the Zinks' UCC-1 form mimics the language of their security agreement. Like the security agreement, the Zinks' UCC-1 form does not cover "products of the collateral." The Zinks' UCC-1 form does not list the Debtors' last names first as that form required; it lists them as "William Van Middlesworth, Jr." and "Frank F. Van

Middlesworth, Jr." It does not state whether the Debtors are individuals.

The Zinks did not send a notice to HSBC indicating that they intended to acquire a purchase-money security interest in the Debtors' livestock. On December 4, 2001, the Debtors received the 54 cows. Those cows are among the total of 96 head owned by the Debtors according to the parties' stipulation of facts.

On or about December 5, 2001, William F. Reynolds, attorney for the Zinks, mailed their UCC-1 form to the New York State Secretary of State by regular, first class mail; they included a check in the amount of $7.00. On December 6, 2001, at or about 9:00 a.m., the New York State Secretary of State physically received the form. On or about December 7, 2001, the New York State Department of State mailed a letter to Mr. Reynolds, rejecting their filing. The letter includes a section called "Reason(s) for rejection." That section states, in part, "The form submitted is an obsolete form that does not contain sections for all information required under Revised Article 9." It also contains paragraphs which describe how to resubmit corrected documents and how to resubmit a rejected filing.

On or about February 1, 2002, Mr. Reynolds submitted an official form adopted by the, New York Secretary of State pursuant to 19 N.Y.C.R.R. Part 143. It included the same description of collateral that the Zinks' rejected form had contained. On or about February 5, 2002, the New York State Department of State sent a letter to Mr. Reynolds, acknowledging the filing of the February financing statement and indicating that the statement had been assigned the following information: "Filing Num-

---

1. HSBC acquired MMB but the date of the acquisition is not in the record.

ber: 027424" and "Filing Date: 02/04/2002."

Both Debtors filed Chapter 13 petitions on April 25, 2002. Debtor Frank F. Vanmiddlesworth, Jr.'s original Schedule B states that he owns 42 cows with a value of $42,000. On June 26, 2002, he filed an amended schedule which states he owns 54 cows valued at $42,000 "as tenant in common with brother, William." Frank's Schedule H lists "William G. Vanmiddlesworth, Jr." as the codebtor on the HSBC secured debts he lists on his Schedule D.

Debtor William G. Vanmiddlesworth, Jr.'s Schedule B states that he owns 54 cows valued at $54,000. Although he lists Frank as a codebtor of HSBC on his Schedule H, none of his original schedules lists HSBC as a creditor. The amended Schedule F William filed on June 26, 2002, however, lists HSBC as a general unsecured creditor for a May 7, 2001 loan in the amount of $3,987 and an undated loan in the amount of $399,390. These amounts match those listed on his brother's Schedule D where the "Codebtor" box is checked.

On May 3, 2002, the Debtors filed their Chapter 13 plans. Both plans specifically address the Zinks' financing statement by providing that unless the matter is settled, the Debtors will commence adversary proceedings "to avoid the unperfected lien." The Debtors' cases were converted to Chapter 12 on May 17, 2002, the same day the Zinks filed their motions in each case, seeking a lift stay or adequate protection. The primary ground the Zinks' attorney cites in the motions is cause under 11 U.S.C. § 362(d)(1) (including lack of adequate protection, default of responsibilities like insurance, accruing interest, late charges and fees and irreparable injury and loss); he also cites 11 U.S.C.

§ 362(d)(2) in his wherefore clause, but does not allege anything regarding it. Another stipulated fact worth noting is that for the years 2000 and 2001, the Debtors filed partnership income tax returns. On both of their Statement of Financial Affairs, the Debtors answered Question # 21 (Current Partners, Officers, Directors and Shareholders) by stating that during 2001, "debtor operated as Vanmiddlesworth Farm Partnership." Each of the Debtors listed himself and the other as a 50% interest holder in the partnership.

(Citations to record omitted.)

Judge Littlefield summarizes the parties' arguments as follows:

Despite moving for adequate protection or, in the alternative, relief from the automatic stay, the Zinks conclude both their opening and reply memoranda by asking for adequate protection only. To that end, they assert four issues that the court must resolve. They are:

(1) whether the Zinks have a perfected security interest that is not subject to being set aside as a preference;

(2) the extent of HSBC's security interest in the 54 cows when its security interest in after-acquired cattle attaches only to cattle belonging to Debtor Frank Vanmiddlesworth, Jr.;

(3) if both HSBC and the Zinks have perfected security interests, their relative priority; and

(4) if the Zinks have a perfected security interest, the appropriate adequate protection payment.

Judge Littlefield found that the Zinks have a purchase-money security interest in the 54 cows. Under New York law,

a perfected purchase-money security interest in livestock that are farm products has priority over a conflicting security interest in the same livestock, and,

except as otherwise provided in Section 9–327 [which is not applicable here], a perfected security interest in their identifiable proceeds and identifiable products in their unmanufactured states also has priority, if:

(1) the purchase-money security interest is perfected when the debtor receives possession of the livestock;

(2) the purchase-money secured party sends an authenticated notification to the holder of the conflicting security interest;

(3) the holder of the conflicting security interest receives the notification within six months before the debtor receives possession of the livestock; and

(4) the notification states that the person sending the notification has or expects to acquire a purchase-money security interest in livestock of the debtor and describes the livestock.

N.Y.U.C.C. § 9–324(d). Judge Littlefield construed section 9–324(d) as requiring compliance with subparagraphs (1) through (4) to establish purchase-money security interest priority over a conflicting security interest both in livestock and in their identifiable proceeds and products.

The parties stipulated that the Zinks never notified HSBC of their purchase-money security interest. Thus, Judge Littlefield determined, the Zinks failed to satisfy subparagraphs (2) through (4) of section 9–324(d). Moreover, he determined that subparagraph (1) was not satisfied, even assuming that the Zinks perfected their purchase-money security interest on December 6, 2001 [2] (when the Department of State received and rejected their initial UCC–1 form), because the Vanmiddles-

worths had already taken possession of the 54 cows on December 4, 2001. Judge Littlefield concluded that, inasmuch as the Zinks failed to satisfy the requirements of 9–324(d)(1)–(4), they failed to create a purchase-money security interest in the 54 cows which would take priority over HSBC's interest arising from the April 7, 1998 security agreement signed by Frank Vanmiddlesworth in favor of HSBC's predecessor.

Judge Littlefield then turned to consider the nature of the interest held by each Vanmiddlesworth. It is undisputed that the two Vanmiddlesworths shared a tenancy in common in the 54 cows. Judge Littlefield observed that one cotenant may encumber or dispose of his interest in the whole without the consent of the other. *See Cary v. Fisher,* 149 A.D.2d 890, 541 N.Y.S.2d 138, 140 (3d Dep't 1989). Moreover, one tenant in common may sever his interest in commonly-held personalty in a replevin and/or conversion action against a cotenant where the personalty is "alike in quality and value and divisible by weight, tale or measure." *Gates v. Bowers,* 169 N.Y. 14, 17, 61 N.E. 993 (1901). In this respect, Judge Littlefield noted that the sales contract and debtors' schedules provide "some evidence" of the value of the 54 cows as of the date the petition was filed and that the evidence was "arguably" sufficient to enable the court to calculate the value of the Zinks' purchase-money security interest in half of them. However, he based his denial of the Zinks' request for adequate protection on another ground, that is, the lack of proof of need for adequate protection.

Section 1205(b) of the Bankruptcy Code provides:

---

**2.** HSBC argues that, if the Zinks' purchase-money security interest is deemed to have been perfected on February 4, 2002, the date of the second filing, it would be avoidable as a preference because filed within 90 days of the filing of the Vanmiddlesworths' bankruptcy petitions and schedules.

[W]hen adequate protection is required under section 362, 363, or 364 of this title of an interest of an entity in property, such adequate protection may be provided by—

(1) requiring the trustee to make a cash payment or periodic cash payments to such entity, to the extent that the stay under section 362 of this title, use, sale, or lease under section 363 of this title, or any grant of a lien under section 364 of this title results in a decrease in the value of property securing a claim or of an entity's ownership interest in property;

(2) providing to such entity an additional or replacement lien to the extent that such stay, use, sale, lease, or grant results in a decrease in the value of property securing a claim or of an entity's ownership interest in property;

(3) paying to such entity for the use of farmland the reasonable rent customary in the community where the property is located, based upon the rental value, net income, and earning capacity of the property; or

(4) granting such other relief, other than entitling such entity to compensation allowable under section 503(b)(1) of this title as an administrative expense, as will adequately protect the value of property securing a claim or of such entity's ownership interest in property.

11 U.S.C. § 1205(b). The provision is not mandatory; its purpose is to protect the creditor against decreases in the value of the collateral where necessary. *See In re Bluridg Farms, Inc.,* 93 B.R. 648, 656 (Bankr.S.D.Iowa 1988); *see also In re Anderson,* 137 B.R. 819, 822–23 (Bankr. D.Colo.1992).

Judge Littlefield concluded that the Zinks did not adduce evidence that the security had declined in value since the Vanmiddlesworths filed their bankruptcy petition, nor did they demonstrate their right to adequate protection relief on any other ground. Further, they did not offer evidence in support of lifting the stay on the ground of lack of adequate protection under 11 U.S.C. § 362(d)(2), nor did they brief the issue. Accordingly, in both cases Judge Littlefield denied the motions for adequate protection or to lift the stay.

### THE APPEAL

In their brief on appeal, the Zinks summarize their arguments as follows:

1. Although the Zinks' first filing statement was rejected by the Secretary of State, it contained all required information, and the Zink security interest may be and should be deemed to have been properly perfected as a matter of law, thus entitling the Zinks to adequate protection payments.

2. Although HSBC bank had a perfected security interest in the after-acquired cows of Frank Vanmiddlesworth, it had no direct security interest in the Zink cows purchased by Frank and William Vanmiddlesworth as tenants in common, because cows are not alike in quality or value and cannot be divided by weight, tale or measure. Because HSBC has no direct security interest in the 54 cows, Appellants are abandoning as moot the argument that their purchase money security interest would have priority over HSBC's blanket security interest.

3. Having established that they have a valid security interest in the 54 cows that they sold to the Vanmiddlesworths, the Zinks are entitled to adequate protection payments while the Debtors use those cows. The

burden of proof as to the adequacy of any proposed adequate protection payment is on the Debtors, Frank and William Vanmiddlesworth.

4. The Record is replete with evidence that the value of the cows is declining, and the Vanmiddlesworths have conceded as much, and there is no evidence supporting the Bankruptcy Court's conclusion that their values are not declining.

■ The Court agrees with Judge Littlefield that in order to resolve this motion, it is not necessary to address the first issue, the date that the Zinks' security interest should be deemed to have been perfected, because resolution of this issue does not affect the outcome of the motion. As Judge Littlefield noted, even assuming that the Zinks had a purchase-money security interest in the 54 cows as of December 6, 2001, it is undisputed that they did not notify HSBC of their interest and that the Vanmiddlesworths had already taken possession of the 54 cows on December 4, 2001. This Court agrees with Judge Littlefield's reading of the requirements of section 9–324 as applying to purchase-money security interests in livestock as well as in their identifiable proceeds. Thus, Judge Littlefield correctly determined that the Zinks failed to satisfy the requirements of subparagraphs (1) through (4) of section 9–324(d), and that, regardless of the date they filed their financing statement relative to their purchase-money security interest, they did not obtain "livestock purchase-money security interest priority" over HSBC with respect to Frank Vanmiddlesworth's interest in the 54 cows.

The Zinks next contend that, in any event, Frank Vanmiddlesworth lacked the ability to pledge to HSBC's predecessor any "direct interest" in the 54 cows, because the only interest Frank Vanmiddles-

worth enjoyed as tenant in common was his undivided interest in the whole. Accordingly, they argue, Frank Vanmiddlesworth could not have conveyed to HSBC's predecessor any interest whatsoever in the 54 cows. Further, they assert that the 54 cows are not readily divisible and that therefore Judge Littlefield erred in applying the rationale of *Gates,* 169 N.Y. at 17, 61 N.E. 993.

■ Judge Littlefield properly rejected the argument that Frank Vanmiddlesworth could not have conveyed to HSBC's predecessor any interest in the 54 cows. A tenant in common in personalty may freely encumber his own interest. *See, e.g., Osborn v. Schenck,* 83 N.Y. 201, 204–05 (1880) (addressing remedies available to plaintiff where plaintiff's cotenant encumbered commonly-held personalty with a chattel mortgage). *Gates,* relied on by the Zinks, does not hold otherwise. It is not necessary at this time to delve into the law regarding when and how a tenancy in common in personalty may partitioned or otherwise disposed of, *see, generally, Gates,* 169 N.Y. at 17–18, 61 N.E. 993; *Stall v. Wilbur,* 77 N.Y. 158, 164 (1879); *Chiang v. Chang,* 137 A.D.2d 371, 529 N.Y.S.2d 294, 295 (1st Dep't 1988); *Loker v. Edmans,* 204 A.D. 223, 197 N.Y.S. 857, 860–61 (3d Dep't 1923), or whether the 54 cows are "alike in quality and value and divisible by weight, tale or measure," *Gates,* 169 N.Y. at 17, 61 N.E. 993; it is enough to say that the Zinks have not established that HSBC has no interest in the cows. Moreover, Judge Littlefield's decision rests on a different ground, which the Court now addresses.

■ Judge Littlefield concluded that the record did not contain sufficient evidence that the 54 cows were declining in value to warrant an order of adequate protection. The Zinks respond that the record is "replete" with evidence of the decline in value

of the 54 cows and that, in any event, the burden of proof on this issue is on the Vanmiddlesworths, not the Zinks. In reviewing this issue, this Court observes that adequate protection is a matter within bankruptcy court's discretion. *See Capital Communications,* 126 F.3d at 47–48.

On the question of the burden of proof, the Zinks contend that the statutory scheme places on the Vanmiddlesworths—not the Zinks—the burden of proof regarding the need for adequate protection. They point out that 11 U.S.C. § 1205, which applies to this case, is by its terms to be read in conjunction with 11 U.S.C. §§ 362, 363 and 364, and that under section 363(o)(1),[3] the debtor "has the burden of proof on the issue of adequate protection[.]" Therefore, the Zinks urge, Judge Littlefield erred when he denied adequate protection payments on the ground that the Zinks bore the burden of proof as to the declining value of the cows and had failed to carry it.

As this Court reads sections 363 and 1205, the initial burden is typically on the creditor to show that adequate protection is necessary because of the likelihood that the value of the collateral is declining or for some other reason. If the creditor shows that adequate protection is necessary, then the "burden of proof on the issue of adequate protection" falls on the debtor under section 363(o)(1) to show that adequate protection exists or for some other reason is not needed.

■■■ The Court reaches this conclusion based on the following. Section 1205 by its terms applies in chapter 12 cases "when adequate protection is required under section 362, 363, or 364 of this title[.]" 11 U.S.C. § 1202(b). Here, the relevant section is section 363, which pertains to situations such as the one at bar where the debtor is permitted to use the collateral during the course of the case. Section 363(e) provides that, *"on request of an entity that has an interest in property used . . . by the trustee [or, as here, by the debtor], the court, with or without a hearing, shall prohibit or condition such use . . . as is necessary to provide adequate protection of such interest."* (Emphasis added.) The Court interprets section 363(e) as placing the initial burden of showing the need for adequate protection upon the creditor having an interest in the property being used by the debtor. *See, e.g., In re Turner,*[4] 82 B.R. 465, 467

---

3. 11 U.S.C. § 363(o) provides:

 In any hearing under this section—
 (1) the trustee has the burden of proof on the issue of adequate protection; and
 (2) the entity asserting an interest in property has the burden of proof on the issue of the validity, priority, or extent of such interest.

 Chapter 12 debtors such as the Vanmiddlesworths have the powers and duties of trustees under 11 U.S.C. § 1203; thus, the Vanmiddlesworths have "the burden of proof on the issue of adequate protection" under section 363(o)(1).

4. In *In re Turner,* 82 B.R. 465, 467 (Bankr. W.D.Tenn.1988), Travelers Insurance Cos., a creditor with a lien on real property owned and used by the debtor in a chapter 12 case, moved under 11 U.S.C. § 1205(b) for adequate protection in the form of rental payments. The *Turner* court read section 1205(b) as requiring "a showing that adequate protection is mandated under one of th[e] enumerated Code sections." 82 B.R. at 467. Under section 363, the *Turner* court found, "[i]t is clear that the court must first make a finding that adequate protection is necessary[.]" *Id.* at 468. The court continued: "The provision in Section 1205(b)(3) of a unique method of adequate protection for Chapter 12 cases in the form of reasonable rents does not automatically mandate that all creditors such as Travelers are entitled to adequate protection payments in this fashion. Rather, the secured creditor is still required to show a necessity for adequate protection, which would include, in this case at least, a showing that the farm property securing Travelers' debt was likely to

(Bankr.W.D.Tenn.1988); *In re Anderson,* 88 B.R. 877, 889 (Bankr.N.D.Ind.1988). In order to meet this burden, the secured creditor must demonstrate that such relief is required by showing a likelihood that the collateral will decrease in value or establishing some other basis for the relief. The burden then shifts to the debtor to show that adequate protection is not needed or can be provided in a different manner. Here, then, under sections 1205 and 363, the initial burden is on the Zinks to show that there is a need for adequate protection by showing the likelihood of a decline in the value of the 54 cows.[5]

■ With respect to evidence of the decline in value of the 54 cows, the Court notes first that the parties' Stipulation as to Facts and Documents contains nothing on this point. In their opening brief, Zinks first point out that in his Memorandum–Decision and Order, Judge Littlefield noted that the value of the 54 cows declined in value prior to the filing of the bankruptcy petitions. Specifically, according to the purchase contract in November 2001, the value of the 54 cows was $89,800, and according to the amended schedules in the bankruptcy submissions their value was $54,000 in April 2002. Judge Littlefield stated in his decision, however, that the "the purchase price versus Schedule B value is merely 'evidence' which shows, at best, that the cows declined in value prior to filing; it does not necessarily show that the cows continue to decline in value."

The Zinks also urge, citing the May 17, 2002 affidavit of the Vanmiddlesworths' attorney Allan J. Bentkofsky, Esq., that the Vanmiddlesworths conceded that the cows were declining in value, that they had a useful life of only three to four years, and that adequate protection payments should be based on amortizing their value over four years. Bentkofsky's affidavit stated:

> Debtor believes that the useful life of the herd is 3–4 years. His cull rate is 30%. In addition, the herd will reproduce, replacing cattle that are culled. Zink has a security interest in off spring as well. Therefore, the Court may allow adequate protection payments which extend over a minimum of four years.

This does not amount to a "concession" that the value of the collateral is declining or that adequate protection is required. Further, Vanmiddlesworths' settlement offer of monthly payments of $1,093.73 based on a half interest in the cows does not amount to a concession that Zinks are entitled to adequate protection nor that, if it were awarded, any particular amount would be warranted. In sum, there is no error in Judge Littlefield's evaluation of the factual support for an award of adequate protection.

■ Finally, the Zinks take issue with Judge Littlefield's decision not to order the $1,093.73 offered by Vanmiddlesworths. Judge Littlefield wrote as follows:

> The court would be inclined to deny that part of [the Zinks'] motions requesting

---

decrease in value between the time of filing of the Debtors' petition and action by the court on confirmation." *Id.*

**5.** This reading of sections 363 and 1205 is consistent with judicial readings of section 362 as placing the initial burden of proof on a creditor seeking an order lifting or modifying the automatic stay on the ground of lack of adequate protection. *See, e.g., In re Sonnax Indus., Inc.,* 907 F.2d 1280, 1285 (2d Cir.

1990) (initial burden to show cause to lift stay is on movant; if movant fails to make such showing, the court should deny relief without requiring nonmovant to adduce proof that stay should not be lifted); *In re Bluridg Farms, Inc.,* 93 B.R. 648, 656 (Bankr. S.D.Iowa 1988); *In re Anderson,* 88 B.R. 877, 889 (Bankr.N.D.Ind.1988); *see also In re Grant Assocs.,* 1991 WL 21228, *6 (S.D.N.Y. 1991); *In re Taylor,* 151 B.R. 646, 648 (E.D.N.Y.1993).

adequate protection, however, the Debtors have offered a monthly adequate protection payment in the amount of $1,093.73. In light of the Zinks' failure to carry their burden, that amount seems more than fair. If there had not been any objection from an interested party, the court would likely have approved such a payment. However, in light of the Debtors' plan proposals which indicate they will seek to avoid the Zinks' perfected status, and, furthermore, since the Zinks have not indicated they would accept the proposed monthly payment if they failed to obtain any of the relief they sought in their motions, the court will not order the Debtors to make the $1,093.73 monthly payment at this time.

Judge Littlefield's manner of handling this issue is not erroneous nor an abuse of discretion. His denial of the Zinks' motion for adequate protection was proper in all respects.

### CONCLUSION

Upon *de novo* review of Judge Littlefield's legal conclusions, this Court finds no error. The Court further finds no clear error in the material findings of fact. Finally, the Court finds that Judge Littlefield properly exercised his discretion with respect to matters vested in bankruptcy court's discretion, such as adequate protection and lifting of the automatic stay. It is therefore

ORDERED in 5:02–CV–1101, *Robert and Ruth Zink, Appellants, v. William G. Vanmiddlesworth, Jr., Respondent,* that the Memorandum–Decision and Order dated August 1, 2002, of U.S. Bankruptcy Judge Robert E. Littlefield (*In re William G. Vanmiddlesworth, Jr.* (Bankr. No. 02–12746) and *In re Frank F. Vanmiddlesworth, Jr.,* (Bankr. No. 02–12747)) is AFFIRMED; and it is further

ORDERED in 5:02–CV–1102, *Robert and Ruth Zink, Appellants, v. Frank F. Vanmiddlesworth, Jr., Respondent,* that the Memorandum–Decision and Order dated August 1, 2002, of U.S. Bankruptcy Judge Robert E. Littlefield (*In re William G. Vanmiddlesworth, Jr.* (Bankr. No. 02–12746) and *In re Frank F. Vanmiddlesworth, Jr.,* (Bankr. No. 02–12747)) is AFFIRMED.

IT IS SO ORDERED.